[S. F. No. 2933.  Department One.—September 15, 1902.]

In the Matter of the Estate of ROBERT MILLS, Deceased.
ROBERT SCHOFIELD CHATHAM et al., Respondents, v. MIRANDA E. MILLS, Administratrix, etc., et al., Appellants.

PARENT AND CHILD — LEGITIMACY — COHABITATION — TESTIMONY OF PARENT INADMISSIBLE.—In the provision of subdivision 5 of section 1962 of the Code of Civil Procedure, that "the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate," the word "cohabiting" means the living together of a man and woman ostensibly as husband and wife; and neither of them is a competent witness to prove the absence of sexual intercourse during their cohabitation, nor that a child born during such cohabitation was the illegitimate child of another man, if the husband is not shown to have been impotent.

ID.—INCOMPETENCY OF PARENT NOT QUALIFIED.—The incompetency of a husband or wife to testify to the illegitimacy of a child born during their cohabitation—the husband not being impotent—is not qualified either by the general provision making interested parties competent witnesses, or by the provision of section 195 of the Civil Code providing that "the presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them," and that "illegitimacy may be proved like any other fact."

APPEAL from a judgment of the Superior Court of San Mateo County.  George H. Buck, Judge.

The facts are stated in the opinion of the court.

John J. Jury, for Miranda E. Mills, as Administratrix, Appellant; and John J. Jury, and John E. Richards, for Miranda E. Mills, as heir-at-law, Appellant.

H. A. Powell, for Ann Schofield et al., Appellants.

Archer Kincaid, for absent and minor heirs, Appellants.

Wilson & Wilson, George C. Ross, and Edward P. Fitzpatrick, for Respondents.

THE COURT.—This case comes here on appeal from a judgment in favor of respondents Chatham and Gardiner and against appellants.  The judgment-roll is accompanied by a

bill of exceptions containing the evidence and rulings of the court. The action was commenced under section 1664 of the Code of Civil Procedure, by respondents Robert Schofield Chatham and Maria Elizabeth Chatham Gardiner, who claimed, and now claim, to be illegitimate children of Robert Mills, deceased, adopted as such under and in the manner provided in section 230 of the Civil Code.

The facts may be briefly stated as follows: Roland and Diana Chatham were married in Cincinnati, Ohio, in 1851. Some time afterwards, between 1852 and 1854, they came to California, and on their journey by steamer met and became acquainted with Robert Mills, deceased. Roland Chatham was a miller by trade, and after arriving in California he lived with his wife, Diana, in Sacramento City for a few months, and then moved to San Francisco, where, after living at various places, he settled with his family at a place called the Potrero, where the family lived until his death, in 1885. Diana Chatham, while living at the Potrero with her husband, became the mother of three children,—to wit: George William Chatham, who was born in February, 1862, at the Potrero, and is admitted to be the son of Roland Chatham, deceased, Robert Schofield Chatham, who was born in September, 1865; and Maria Elizabeth, who was born in May, 1869. The latter two children are now claimed to be the illegitimate children of deceased Robert Mills, and not the children of Roland Chatham, deceased. During all the married life of Roland Chatham, and during the time of the birth of the three children, he slept at the one home of himself and his wife, Diana, lived there and ate at the table with his wife and family. He does not appear to have ever been absent from the state or from his family for any length of time. In the family Bible, after the entries of the dates and places of birth of the husband and wife, and the date of their marriage, under the head of "Births," appears the following:—

"George William Chatham, born February 10th, 1862, San Francisco, U. S. Robert Schofield Chatham, born September 1st, 1865, San Francisco, U. S. Maria Elizabeth Chatham, born May 19th, 1869, San Francisco, U. S."

The respondents during the lifetime of Roland Chatham always bore his name, and their names were entered as "Chatham" at the various schools where they attended. While

respondent Robert was a growing boy he slept a large portion of the time with Roland Chatham, the husband of Diana. Respondents always called Roland Chatham "Dad." Roland Chatham had a family (or group) picture taken while the respondents were small children, in which himself and wife and the three children appear. This picture was hung up in the family home of the Chathams. Roland Chatham died in 1885 in the little bedroom where he usually slept at the family home at the Potrero. Diana, the widow, attended the funeral with the three children, in the mourner's carriage. After the death of Roland Chatham, the property which had been occupied as a home was conveyed by the three children to their mother, Diana. This deed was made in July, 1894, and recited that it was made between "George W. Chatham, Robert S. Chatham, and Maria E. Chatham, the sons and daughter of Roland and Diana Chatham respectively." In January, 1897, Robert Mills signed a statement in writing as follows:—

"Belmont, January 8th, 1897.

"Knowing that death is certain and often sudden, I make this statement. I never had but one wife, Miranda E. Mills. I leave no children. I have left no will and wish the distribution of my estate to be made according to the laws of this state.      Robert Mills."

On April 26, 1897, Robert Mills died. This proceeding was commenced in August, 1899.

Section 230 of the Civil Code provides as follows: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption." And section 193 of the same code provides that "All children born in wedlock are presumed to be legitimate."

It was therefore necessary for respondents, as the very foundation of their case, to allege and prove that they were illegitimate children of Robert Mills, deceased. They called their mother, Diana, as a witness in their behalf, and, under appellants' objection that the witness was incompetent, and

that the evidence was inadmissible under the code, she was permitted to testify that in 1862, before either of the respondents were begotten, she ceased to occupy the room with her husband, and that she never had sexual intercourse with him after that time, nor with any one else except Robert Mills; that Robert Mills agreed with witness in 1863 to live with her as husband and wife, and that Roland Chatham knew of the agreement; that thereafter the witness slept with Robert Mills in a bedroom in the home of herself and husband, and adjoining the bedroom of her husband; that there was a door between the room occupied by witness and Mills and that occupied by her husband; that she pushed the bed up against the door during the night; that her husband knew that Mills was habitually having sexual intercourse with her, but remained friendly with Mills, and sat at the family table and ate with him; that her husband knew that Mills was the father of respondents. Appellants objected in various ways to the testimony, and saved their exceptions to the rulings admitting it. The court erred in the rulings complained of as to the above evidence. It is provided in subdivision 5 of section 1962 of the Code of Civil Procedure that "the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate." The word "cohabiting," as used in the above section, means the living together of a man and woman ostensibly as husband and wife. (1 Bishop on Marriage, Divorce, and Separation, sec. 1669, note 1.)

The evidence received was for the purpose of proving a fact which by the above provision is made indisputable.

The section not only lays down a rule by which we must be governed, but the rule is the one supported by the best authorities, on the ground of public policy. It is the rule given by the text-writers and the great weight of authority. When Robert Faulconbridge made the claim that his older brother was the illegitimate son of Cœur-de-Lion, the rule is thus stated:—

"*King John.*—Sirrah, your brother is legitimate;
Your father's wife did after wedlock bear him;
And, if she did play false, the fault was hers;
Which fault lies on the hazards of all husbands
That marry wives."—(King John, act I, scene 1.)

It is said in Greenleaf on Evidence (Lewis's edition, 1896, vol. 2, sec. 1): "The husband and wife are alike incompetent witnesses to prove the fact of non-access while they lived together." The rule is thus stated by Jones in his work on Evidence (vol. 1, sec. 96): "It is well settled on grounds of public policy affecting the children born during the marriage, as well as the parties themselves, that the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them, nor are the declarations of the husband or wife competent as bearing on the question."

In a late case in Wisconsin (*Shuman* v. *Shuman,* 83 Wis. 255) the question is extensively discussed and the rule as stated above adopted. In the opinion it is said: "The court rejected as inadmissible all testimony of the statements or admissions of Andrew and Lelia M. Ingle tending to show that they had no sexual intercourse with each other during the time within which it is possible that Frances M. was begotten. The ruling was correct. No rule of evidence is better settled than that husband and wife are alike incompetent witnesses to prove the fact of non-acess while they lived together." (For further authorities to the same effect, see 3 American and English Encyclopedia of Law, title "Bastardy," (2d ed., p. 878, and cases cited in note 1); *Bell* v. *Territory of Oklahoma,* (February, 1899), 56 Pac. Rep. 853; *Abington* v. *Duxbury,* 105 Mass. 290; *Scanlon* v. *Walshe,* 81 Md. 118;[1] *Mink* v. *State,* 60 Wis. 583;[2] *Tioga County* v. *South Creek Township,* 75 Pa. St. 436; 1 Bishop on Marriage, Divorce, and Separation, sec. 1179.)

It is claimed by respondents that the above rule is not in force in this state by reason of the Code of Civil Procedure (sec. 1879), which provides that all persons may be witnesses, and that "neither parties nor other persons who have an interest in the event of an action or proceeding are excluded." The above section was passed for the purpose of abrogating the common-law rule which excluded parties from testifying in their own suits or where they had an interest in the subject-matter in controversy. It was not intended to abrogate the rules of evidence founded upon the reason and experience of

---

[1] 48 Am. St. Rep. 488.          [2] 50 Am. Rep. 386.

ages.  Nor was it intended to break down a rule founded in decency, morality, and public policy.  This question has arisen in other courts under similar code provisions, and the courts have uniformly considered the rule of the common law in question unchanged.  (*Egbert* v. *Greenwalt*, 44 Mich 245;[1] *Tioga County* v. *South Creek Township*, 75 Pa. St. 436; *Chamberlain* v. *People*, 23 N. Y. 85.[2])

This court accordingly held in *Estate of Heaton*, 135 Cal. 388, that the provisions of subdivision 11 of section 1870 of the Code of Civil Procedure, to the effect that evidence may be given of "common reputation existing previous to the controversy, respecting facts of a public or general interest more than thirty years old, and in cases of pedigree and boundary," was never intended to broaden the common-law rule limiting common reputation as to pedigree to declarations of members of the family.

It is further contended that the provision of subdivision 5 of section 1962 of the Code of Civil Procedure is in conflict with section 195 of the Civil Code, which provides: "The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them.  Illegitimacy in such case may be proved like any other fact."

We do not think the expression "proved like any other fact" was intended to do away with the well-known rules of evidence and allow all kinds of evidence, whether incompetent, secondary, or hearsay.  Any fact in controversy pertinent to the issue may be proved by competent evidence and subject to the rules as to presumptions.  Where the law makes a certain fact a "conclusive presumption" evidence cannot be received to the contrary.  The proof of any fact must be made by legal evidence subject to the rules as to presumptions and as to incompetency.  Illegitimacy may be proved; but it cannot be proved by the evidence of a husband or wife that while living together they did not have sexual intercourse.  It would require a very plain and express statute to convince us that the legislature intended to do away with a rule founded upon good morals and public policy, and to allow evidence which shocks every sense of decency and propriety.

In this discussion we have not overlooked the fact that the law is not as rigid as formerly in cases of this kind.  The

---

[1] 38 Am. Rep. 260.        [2] 80 Am. Dec. 255.

common-law rule was, that the child of a married woman was conclusively presumed to be legitimate if begotten while her husband was within four seas,—that is, within the jurisdiction of the kingdom of England,—unless the husband was impotent. (Coke on Littleton, sec. 244a.)

The modern rule was stated by Lord Langsdale in *Hargrave* v. *Hargrave,* 9 Beav. 552, as follows: "A child born of a married woman is in the first instance presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse." And the same rule is supported by the authorities in this country. (*Shuman* v. *Shuman,* 83 Wis. 254; Thayer on Evidence, appendix A, p. 540; 2 Lewis's Greenleaf on Evidence, sec. 150.) But the above rule does not allow either of the parents to testify to the fact of non-access during cohabitation. Nor is the rule inconsistent with the conclusive presumption that a child begotten and born while the husband and wife are living together as such, and the husband not impotent, is legitimate.

It is not necessary to discuss other questions in the case.

The judgment and order are reversed.

Hearing in Bank denied.