[Civ. No. 13265.   Second Dist., Div. One.   Feb. 17, 1942.]

WALTER KENDALL DAZEY, a Minor, etc., Appellant, v.
GEORGE K. DAZEY et al., Respondents.

Joseph Scott and Leo B. Ward for Appellant.

Jerry Giesler for Respondents.

DRAPEAU, J. pro tem.—The complaint was filed by a guardian *ad litem*, the grandfather of a five year old child, and upon the subsequent death of said guardian *ad litem*, his wife was appointed by the court to succeed him. Facts are alleged upon which the plaintiff prays that the court determine which of two individuals is the father of the child. These two individuals we will refer to as husband No. 1 and husband No. 2.

Husband No. 1 lived with the mother of the child for several years, until the marriage was terminated by a final decree of divorce September 14, 1933. October 11, 1934, the mother and husband No. 2 were married. May 24, 1935, the child was born—225 days, or seven months and fifteen days after the date of the second marriage. October 3, 1935, the mother died.

The complaint alleges that when born the child was mature; that husband No. 2 has since remarried, and that he and his present wife have instituted proceedings in the juvenile court with a view toward adopting the child. The complaint also contains allegations on information and belief; that husband No. 1 is the father of the child and that husband No. 2 is not; that the mother stated to the grandfather before she died that husband No. 2 was not the father of the child; and allegations

of cohabitation between husband No. 1 and the mother within a period of 264 days before the child was born.

Our codes (Civil Code, section 193; Code of Civil Procedure, sections 1962, 1963) set forth an indisputable presumption that a child born in lawful wedlock of a wife cohabiting with her husband is legitimate. In construing these code sections our courts have held that there are certain exceptions manifestly proper to be made.

The common-law rule was that the child of a married woman was conclusively presumed to be legitimate if begotten while her husband was within four seas,—that is, within the jurisdiction of the kingdom of England,—unless the husband was impotent. (*Estate of Mills* (1902), 137 Cal. 298 [70 Pac. 91, 92 Am. St. Rep. 175] at 304.)

In the concluding paragraph of the case just cited our Supreme Court has stated the modern exceptions to the rule of conclusive presumption as follows: ''The modern rule was stated by Lord Langsdale in *Hargrave* v. *Hargrave,* 9 Beav. 552, as follows: 'A child born of a married woman is in the first instance presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse.' And the same rule is supported by the authorities in this country. (*Shuman* v. *Shuman,* 83 Wis. 250, 254 [53 N. W. 455]; Thayer on Evidence, appendix A, p. 540; 2 Lewis's Greenleaf on Evidence, section 150.) But the above rule does not allow either of the parents to testify to the fact of non-access during cohabitation. Nor is the rule inconsistent with the conclusive presumption that a child begotten and born while the husband and wife are living together as such, and the husband not impotent, is legitimate.''

This rule is repeated and approved and applied in *Estate of Walker* (1917), 176 Cal. 402 [168 Pac. 689]. In that case the court in its opinion quotes, in part, the language of Lord Langsdale in the Hargrave case, *supra,* as follows: '' 'It is, however, very difficult to conclude against the legitimacy in cases where there is no disability and where some society or

communication is continued between husband and wife during the time in question, so as to have afforded opportunities for sexual intercourse; and in cases where such opportunities have occurred and in which any one of two or more men may have been the father, whatever probabilities may exist, no evidence can be admitted to show that any man other than the husband may have been or probably was the father of the wife's child.' "

Again, in *Estate of Walker* (1919), 180 Cal. 478 [181 Pac. 792], the Hargrave case is referred to, and on page 491 of the reported decision, the Supreme Court states the California rule applied to the facts in that case as follows: "... the true rule in America, as well as England, is, we believe, that if it is possible by the laws of nature for the husband to be the father (that is, if there was coition and no impotency), no inquiry will be permitted into the probabilities of the case one way or the other, but the presumption of legitimacy is conclusive."

In *Estate of McNamara* (1919), 181 Cal. 82 [183 Pac. 552, 7 A. L. R. 313], the Supreme Court affirmed the rule as stated; but in applying it held that a period of gestation of 304 days was greater than is usual or normal, and that, therefore, the presumption which we are discussing was not applicable.

In *Anderson* v. *Anderson* (1931), 214 Cal. 414 [5 Pac. (2d) 881], the court held that a mature child born at the end of a period of gestation of 3½ months (105 days) was not within the usual or normal period of gestation, and that the presumption did not apply.

To apply the facts alleged in the complaint in this case becomes much more difficult than to ascertain and to state the rule involved. In the mysteries of birth, and of life, and of death, Mother Nature follows no exact pattern. In dealing with man's length of life, the Bible speaks of three score years and ten as but an approximate average; our life expectancy tables are but averages. Living men and women and children are, within limitations, each different from the other. Indeed, no two of us are, or ever have been, exactly alike. When we deal with mankind, there is no fixed standard of height or weight or conduct, or time. And so, in dealing with the mystery of the beginning of mortal life, we find no fixed number of days from conception to birth.

In California it was held in the McNamara case that 304 days was too long to be within the usual and normal period of gestation, and it was held in the Anderson case that 3½ months (105 days) was too short.

What is meant by the words "period of gestation"? Here we have an apparent misnomer. The word "gestation" is defined by the dictionary as being the period of time in which a woman carries a fetus in her womb, from conception to birth. But, as used in all medical authorities this phrase does not mean the actual number of days from conception to birth. One cannot take the date of birth as a starting point and count backwards so many days and say that a child was conceived on any particular date, even within limitations of as much as sixty days. The average period of gestation which the medical term connotes is from 270 to 290 days *from the last menstrual period* of the mother. As a medico-legal term this phrase does not mean now, nor has it ever meant, that "length of gestation" is from 270 to 290 days from the date of conception to the date of birth of a child.

"The actual duration of pregnancy is not yet known, but ordinarily two hundred and eighty days, or ten lunar months, elapse between the commencement of the last menstrual flow and the onset of labor, though a considerable number of children are born shortly before or after the expiration of that period." (Williams' Obstetrics, sixth edition, page 163.)

In the case at bar, in considering the possible natural length of gestation of this child, we must take the 225 days alleged in the complaint as elapsing from the date of marriage to the date of birth, and we must add an additional 25 days at least, making a total possible and natural period of gestation of 250 days. This is so because we must assume that conception of the child took place on the night of the marriage (*Estate of McNamara, supra,* at page 88) ; we must also assume that this child was conceived just before the end of the mother's recurrent monthly menstrual period of 28 days. "But," says someone, "you are computing from a time 25 days before marriage of this mother. How can that be?" The answer is that we are applying an empirical measure of time, and it is the measure which we are using which extends the possible and natural number of days, to a time before the date of the marriage. To illustrate: If this lady, believing she was pregnant, had gone to her doctor to inquire the probable date of birth of the child, the doctor would have used 280 days from her last menstrual period, regardless of the date of the marriage, and he would (if it were 25 days before the marriage) have computed from that earlier date. The whole matter is discussed in

DeLee's Principles and Practice of Obstetrics, fourth edition, page 25:

"It is important to know the time pregnancy begins, but, unfortunately, we are in a position as yet only to guess at the exact date. The knowledge is wanted in order to determine the day of confinement and the actual length of human gestation for practical reasons, for the scientific study of the development of the ovum in the uterus, and for medico-legal processes in the question of legitimacy of a child or its paternity. All the points on which such a determination could rest are uncertain, as: (1) The date of the fruitful coitus (the woman's word must be accepted); (2) the date the ovum left the ovary, and whether it was fertilizable or not; (3) how long it takes the ovum to reach the tube and uterus; (4) how long it takes the spermatozoids to reach the ovum; (5) how long the fertilized ovum rests before it begins to germinate—all unknown factors. . . .

"It is customary to reckon the length of pregnancy as nine calendar months, or ten lunar months, two hundred and eighty days' duration, dating from the first day of the last menstruation. Clinical experience shows that most labors occur at this time. If Reichert's theory is true for the majority of cases, one will have to conclude that the normal length of pregnancy is two hundred and fifty-two days, and this is contradicted by the length of time occurring from the date of a single insemination to labor, i. e., two hundred and seventy-two days, which is the average of a large number of authentic cases. Further, if the theory that the ovum from the first menses missed is fertilized is the true theory, the majority of women ought to have a period of amenorrhea of three hundred and eight days instead of two hundred and eighty days, during which time they considered themselves pregnant. But we know that in the great majority of cases the period of amenorrhea is of only two hundred and eighty days' duration. Therefore unless we are willing to admit that pregnancy lasts only two hundred and fifty-two days, we must concede that the majority of conceptions occur at the time around the last menses present."

This author also plainly states that if we compute the period from fruitful coition to birth, it varies from 220 days to 330 days. ("Principles and Practice of Obstetrics," sixth edition, chapter 5, page 120, by Joseph B. DeLee, A.M., M.D. [Professor of Obstetrics and Gynecology, Emeritus, University of Chicago, Consultant in Obstetrics, Chicago Lying-In Hospital

and Dispensary; Consultant in Obstetrics, Chicago Maternity Center]:

"The most reliable datum from which to estimate the beginning is the date of fruitful coition, and, reckoning from this day, pregnancy has been found to vary from two hundred and twenty to three hundred and thirty days, the average being two hundred and seventy days. . . . From time immemorial women have reckoned two hundred and eighty days, ten lunar months, or nine calendar months, from the first day of the last period as the length of normal gestation, and for practical purposes this may be accepted, because in the majority of cases it holds true, but one must remember and admit the exceptions. No doubt some children require a longer time in the uterus for full development than others. Some seeds in favorable soil grow faster than others. The writer has delivered children that were carried eight months that were as matured as full-term infants, and also in one case, he delivered a child weighing three and one-half pounds which was fully three weeks over term. Heyn had a case of two hundred and twenty-nine days' pregnancy, with child of 2980 gm. and 50 cm. length." [About 6½ pounds.]

There is an allegation in the complaint that this child was a mature child when born. This, however, is entirely consistent with the usual and normal period of pregnancy which we have been discussing, subject to natural variants always present. In construing the application of section 194, Civil Code, in paternity cases, our Supreme Court held in the McNamara case, *supra,* that a reasonable construction of the word "month" meant a period of thirty days. Using thirty days as one month for the purpose of computing length of gestation in this case, we find that a period of 250 days is the equivalent of eight months and ten days. All medical writers agree that it is not at all unusual for a mature child to be born at eight months.

Having discussed two methods of computing the period of gestation, we conclude that, using either method, the fact that 225 days elapsed from the date of marriage to the birth of the child does not require us to hold, as a matter of law, that in this case the time of gestation was so short as to be abnormal, or contrary to the usual operation of the laws of nature. Therefore, the trial court properly applied the indisputable presumption prescribed by our code to the facts alleged in the complaint, and the demurrer to the complaint was properly sustained without leave to amend. This conclusion is made easier for us

because it is the policy of the law to declare children legitimate when it can be fairly done. Unless the law plainly points to that end, a conclusion in favor of illegitimacy will not be declared. (*Estate of Wood*, 137 Cal. 129 [69 Pac. 900].)

There is no necessity of discussing the arguments in the brief relative to whether the guardian *ad litem* has the power to bring the action, or whether there was abuse of discretion on the part of the trial court in not giving the plaintiff an opportunity to amend his complaint.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 16, 1942.