[Civ. No. 4694. Fourth Dist. Mar. 2, 1955.]

SAM H. RUDNICK, Respondent, v. BEULAH LORETTA RUDNICK, Appellant.

Ehrlich & Blonder, Mack, Bianco & King, D. Bianco and Richard H. Oshman for Appellant.

Borton, Petrini, Conron & Brown for Respondent.

BARNARD, P. J.—The defendant has appealed from that part of a judgment which annuls a marriage and decrees that there was no issue of said marriage, and from an order denying an application for certain attorneys' fees and support money.

The parties to the action were married in Las Vegas, Nevada, on August 11, 1951. The plaintiff brought this action on October 5, 1951, alleging, among other things, that at the time of this marriage the defendant had another husband living; that this prior marriage had never been dissolved by divorce or otherwise; that the defendant falsely represented to the plaintiff that she was single; that plaintiff believed this representation to be true and relied upon it; and that plaintiff, since ascertaining the facts, has not lived or cohabited with the defendant. In a supplement to the complaint it was alleged that a child was born to the defendant on February 26, 1952; that the defendant named him Samuel H. Rudnick, Jr.; and that plaintiff is not the father of said child. The answer alleged among other things that the defendant was pregnant at the time of the marriage on August 11, 1951; that this child was the issue of that marriage; that the defendant had obtained a divorce in Mexico on March 3, 1951; and that the

plaintiff requested her to obtain said divorce and assisted her in obtaining the same.

The court found, among other things, that the marriage of these parties was null and void from its inception; that there was no issue of said marriage and the plaintiff is not the father of the child born to the defendant on February 26, 1952; that the defendant was married to one Gerald L. Davis in Bakersfield on July 28, 1944; and that such marriage has not been dissolved by divorce or otherwise, and is still in full force and effect. It was found that most of the material allegations of the defendant's answer were untrue, it being further found that the defendant filed an action for divorce against Davis in Kern County on October 4, 1949, and later dismissed said action prior to the time any decree was entered; that that action was not filed at the request of the plaintiff; that plaintiff had not entreated the defendant to obtain a divorce from Davis and had not informed Davis of his desire to marry the defendant; that defendant did not take up her residence in Mexico, and her marriage to Davis was not dissolved on March 3, 1951; that the plaintiff did not know that the defendant had gone to Mexico for the purpose of obtaining a divorce and did not encourage or assist her in procuring such a divorce; that the defendant did not show a divorce decree to the plaintiff within a few days after she received it; and that the plaintiff did not advise her that his attorney had informed him that such decree was valid.

It was further found that the plaintiff and defendant went through a marriage ceremony in Las Vegas on August 11, 1951; that they lived together until September 11, 1951, and have since lived separate and apart; that the defendant went to Tijuana, Mexico, remaining there not exceeding two days, and engaging an attorney to obtain a divorce from Davis; that she signed a power of attorney authorizing one Mena to bring and prosecute a divorce proceeding against Davis in the State of Guerrero, Mexico; that this power of attorney was not acknowledged before any notary public as required by the laws of Mexico; that the defendant was not at any time during 1951 in the State of Guerrero or in any other part of Mexico except Tijuana; that immediately after signing this power of attorney she returned to Bakersfield where she has resided for many years and still resides; that on or about March 19, 1951, she received a writing purporting to be a decree of divorce from Davis issued by the court of first instance in the city of Tixtla, Guerrero, Mexico; that said decree was wholly

fictitious and void and not based upon any proceeding filed in the described court or any other court having jurisdiction of such a proceeding; that said decree was purely a "mail order" decree not based upon a court proceeding of any nature and was one having no validity or effect in Mexico or in California; that the defendant's husband, Davis, was domiciled in California at all times from 1944 until after September, 1951; that he was actually present and living in this state from the beginning of 1951 until after the end of April, 1951; that he was in the United States Air Force and was stationed near Sacramento from January, 1951, to the end of April, 1951; that he and the defendant were periodically together during the first four months of 1951; that they were together on or about the end of April, 1951, and again from September 19, 1951, to September 21, 1951, in Omaha, Nebraska; that Davis maintained a home for himself and the defendant in Bakersfield from the date of their marriage until July 28, 1951; that Davis was never a resident of Mexico and was not in Mexico during the first four months of 1951; that he had never appointed any agent for service of process in Mexico, was never served with any process of any court or papers of any kind in connection with any divorce proceeding in Guerrero or elsewhere in Mexico; that he did not authorize anyone to represent him and did not appear either in person or by agent in any proceedings in any state in Mexico; and that Davis did not have notice, actual or constructive, of any Mexican divorce proceeding or any other divorce proceeding during 1951.

It was further found that the defendant represented to the plaintiff that she had obtained a divorce from Davis in Kern County near the end of the year 1949, and that since that time she was a single woman; that the plaintiff believed said representations, which were false; that the plaintiff did not participate in the purported Mexican divorce proceeding directly or indirectly, did not assist the plaintiff in any way in that regard, and had no notice or knowledge that defendant claimed such a divorce from Davis until after the separation of the plaintiff and the defendant; that the defendant represented to the plaintiff that she had not associated with her husband, Davis, or with any man other than the plaintiff between February 1, 1951, and August 11, 1951, and such representations were false; that a child was born to the defendant on February 26, 1952, which the defendant named Samuel H. Rudnick, Jr.; that such child was not the result of any relationship of the defendant and the plaintiff; and

that the plaintiff is not the father of said child and such child is not the issue of the void marriage of the plaintiff and defendant.

The court then made long findings as to what was necessary under the laws of Mexico at that time in order to confer jurisdiction upon such a court of first instance in Guerrero, Mexico, to grant a divorce in that state, and finding various particulars in which these laws had not been complied with in connection with this purported Mexican divorce decree and further finding that the court of first instance in Guerrero, named in the decree, had no jurisdiction over either Davis or the defendant to render any decree of divorce between them. As conclusions of law, it was found that the marriage between the plaintiff and defendant was null and void and should be annulled on the ground that the defendant had another husband living; that defendant's prior marriage was in force and undissolved at the time of her purported marriage to the plaintiff; that there was no issue of her marriage to plaintiff, and the plaintiff is not the father of Samuel H. Rudnick, Jr.; and that there is no community property of the parties. Judgment was entered accordingly and this appeal followed.

There is ample evidence to support the essential findings as to the invalidity of the marriage in Las Vegas on August 11, 1951, if that evidence was properly admitted and could be considered by the court. There was evidence clearly indicating that no valid decree of divorce from Davis had ever been secured by the defendant, that the plaintiff had not participated in the attempt to secure a Mexican divorce and knew nothing about such a proceeding, and that the defendant represented to the plaintiff that she had secured a final divorce in Kern County in the latter part of 1949. The defendant was evasive and gave many false answers in her testimony. She testified that she had married one Fuller in Mexico in December, 1941, and divorced him in Mexico on January 2, 1942. She later admitted that she had never been married to Fuller nor divorced from him. A letter she wrote to Fuller while this action was pending was received in evidence, in which she asked Fuller to perjure himself in this case in order to assist her in prevailing in this action, telling him what she wanted him to say and urging him to memorize it carefully. Although she contended that she had told the plaintiff about the Mexican divorce and he had assisted her in such a proceeding she signed an affidavit of

application for a marriage license at Las Vegas on August 11, 1951, in which it was stated she had been previously married and had received a final decree of divorce on October 27, 1949, at Bakersfield, California, on the ground of cruelty. The plaintiff had knowledge of that statement since he also signed the same application, which contained matters relating to him.

The defendant was married to Davis in 1944 at Bakersfield. He was an officer in the Air Force but he continued to maintain his residence in Bakersfield, where the defendant resided. He was stationed at Sacramento the first four months of 1951 and on or after April 30, while on his way to an overseas assignment, he went to Bakersfield where he stopped for a day or two, picking up some things at their home, but leaving his automobile with the defendant. He did not know of any alleged Mexican divorce decree at that time. She wrote letters to him and called him long distance in London in July, 1951. On a visit to America in September, 1951, he arranged to meet her at Omaha and they registered at a hotel as husband and wife, and stayed there three days. She continued to receive support money from Davis and as late as September, 1951, he directed a letter to her as "Mrs. G. L. Davis."

As early as 1948, the defendant started going with one Fink, the manager of a store in Bakersfield where she worked. In January, 1951, Fink moved from Bakersfield to Eureka. The defendant followed him there and from then on through May, 1951, she was with him in his apartment there a considerable part of the time. Over Washington's Birthday in 1951, she and Fink went to Mexico supposedly to get married. Following that event she was introduced by Fink as his wife in Eureka and lived with him in his apartment. She later returned to Bakersfield and said she did not like Eureka and was going to dissolve her marriage to Fink.

Shortly after Labor Day 1951, the plaintiff returned to Bakersfield. A check was made of the Kern County divorce action and plaintiff discovered for the first time that that action had been dismissed in January 1950 without any decree having been entered. The plaintiff immediately separated from the defendant. After this action was started plaintiff learned for the first time that the defendant claimed to have obtained a divorce decree from Davis in a Mexican court.

With respect to the annulment portion of the judgment the defendant contends that the plaintiff could not attack the Mexican divorce decree because he was not a party to

or interested in that proceeding. It is argued that the case of *Mumma* v. *Mumma*, 86 Cal.App.2d 133 [194 P.2d 24], and certain cases from other jurisdictions, have established the rule that a second husband has no standing to collaterally attack his wife's decree of divorce because of his lack of interest at the time it was entered; that the court's finding that this Mexican divorce decree was invalid and that jurisdiction had not been obtained could only be based upon the ground that the defendant had misrepresented the residence of Davis to the Mexican court; that the finding of lack of jurisdiction was based upon a claim of fraud, and this case comes squarely within the rule in the Mumma case; that the only one who can complain of this fraud is Davis, who has not seen fit to do so; that this plaintiff, being a stranger to that decree, has no standing to collaterally attack it for such fraud; that the court's finding that the Mexican decree of divorce was fictitious and void was not supported by admissible evidence; and that the finding that the supposed decree was not based on any proceedings filed in the Mexican court was improper since evidence of the nonexistence of court records should not have been admitted. In support of the last contention it is argued that under sections 1855, 1904, 1906 and 1907 of the Code of Civil Procedure such a judicial record can only be proved by a copy of the original or of the record properly attested by the clerk of the court and by the testimony of a witness that the copy has been compared with the original, is an exact transcript thereof, that the original was in the custody of the clerk, that the copy is duly attested by a seal proved to be the seal of the court where the record remains; and that the plaintiff was permitted to prove the contents of a judicial record of a foreign country contrary to these code provisions.

While it was stated in the Mumma case that a stranger to a foreign divorce decree can impeach it collaterally for fraud only when it injuriously affects him, and further stated that when he subsequently marries one of the divorced parties he has no such interest as will enable him to attack the decree (for fraud), that language must be considered in light of the facts of that case. That was an action for damages for fraud brought by a wife against her husband, she having previously brought an action for divorce in this state in which she had obtained an interlocutory decree establishing the validity of her marriage to the defendant, which had become final. It was further pointed out in that case that the

jurisdictional grounds upon which a foreign divorce decree is subject to collateral attack in this state are set forth in *Cardinale* v. *Cardinale,* 8 Cal.2d 762 [68 P.2d 351], where it was held that a foreign divorce decree is subject to collateral attack upon three jurisdictional grounds: (1) that it was procured upon a fraudulent domicile or residence, (2) that the laws of the state granting the decree were not complied with, and (3) that the spouse who procured the divorce was the wrongdoer whereas the other spouse was a citizen of this state, was neither personally served nor appeared, and was the innocent party; and that if any one of these jurisdictional defects is established the foreign decree will not be recognized as valid in this state. It was further held in *Mumma* v. *Mumma* that it is always open to the person against whom a judgment of another state is attempted to be used to show by extrinsic evidence, and even by evidence opposed to recitals contained in such a record, that the court purporting to give the judgment was without jurisdiction either of the cause or of the parties. A similar holding is found in *Crouch* v. *Crouch,* 28 Cal.2d 243 [169 P.2d 897], although it has been held that a foreign decree cannot be attacked by a party who procured it, or a party who has remarried in reliance thereon or by one who has aided another to procure the decree in order that the latter will be free to remarry. (*Rediker* v. *Rediker,* 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152].) It was held in *Kegley* v. *Kegley,* 16 Cal.App.2d 216 [60 P.2d 482], that a "mail order" divorce, where both parties lived in California and neither was in Mexico at the time a petition was filed in the Mexican court and at the time the decree was granted, could be attacked for lack of jurisdiction.

The court here found such a lack of jurisdiction in the Mexican court and under these cases, and many others which might be cited, we think the plaintiff could properly attack the validity of this Mexican divorce decree. The defendant and her husband were residents of California and, having been in Tijuana only two days, she claimed to have secured a divorce decree just 13 days later in another city and district about a thousand miles from there. There was ample evidence that the jurisdictional facts to support that decree were lacking. Two experts on Mexican law testified to the effect that this purported decree was void upon its face, and there was a large amount of testimony as to what was required by Mexican law at that time, and that the

required facts were not only nonexistent but their lack was disclosed by the papers purportedly filed in and issued by the Mexican court. It was further shown by the testimony of competent witnesses that a search of the records of the court in question had disclosed that there was no record in that court that any such divorce proceedings had ever been brought or acted upon in that court. The plaintiff was an interested party with respect to the effect of the purported Mexican divorce decree, and regardless of other considerations the court properly admitted evidence for the purpose of showing that no such proceeding had been had in this Mexican court and that no such decree had been issued by that court. While the code sections relied on by the defendant are designed to show how an existing court record may be proved they are not applicable or controlling where there is no court record, and cannot be held to deprive a party of the right to show that no such record, in fact, exists. The question as to whether a valid Mexican divorce decree existed which had the effect of terminating the marriage of defendant Davis was a question of fact for the trial court, and the court's findings in that connection are supported by evidence which was properly admitted.

The defendant next contends that the plaintiff was estopped to attack the Mexican decree of divorce. It is argued that the public policy of this state requires the preservation of the second marriage if possible, rather than its annulment, citing *Rediker* v. *Rediker,* 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152] ; that the rule of estoppel applied against any party to a divorce decree who either procured it, remarried in reliance thereon or who aided one of the parties to procure it, was extended by *Dietrich* v. *Dietrich,* 41 Cal.2d 497 [261 P.2d 269], so as to apply to one who is neither a party to that proceeding nor aided therein, but who married one of the parties with knowledge of the circumstances under which the decree was obtained; that the plaintiff knew that the defendant had been a married woman and never made any inquiry of her regarding any divorce of that marriage; that although he claimed that he had married the defendant because she convinced him he was the father of the child, he deliberated for approximately two months before marrying her and it was apparent from his actions that he intended to mislead her at all times; that the court's findings that the defendant represented to the plaintiff that she had obtained a divorce from Davis in Kern County near the end of 1949 and

that the plaintiff believed the same, are supported by no evidence other than the defendant's statement to that effect in her marriage license in Las Vegas; and that there is no evidence that the plaintiff saw that application. Both parties signed that application and the only reasonable inference is that the plaintiff saw it and was acting on that statement. There is evidence, which the court believed, that the plaintiff took no part in the attempt to get a Mexican divorce, that he did not rely upon it, and that he knew nothing about it until after this action was filed. While there is a conflict in the evidence, there is ample evidence to support the findings in favor of the plaintiff and against the defendant on the facts involved in this contention. It cannot be held, as a matter of law, that such an estoppel here appears.

Some contention is made in the closing brief that the plaintiff could not attack the Mexican decree because an authenticated copy of that decree and a copy of the purported complaint and return of service was offered in evidence by the plaintiff, and that the decree was thus vouched for by him as being true. This contention is without merit. In connection with the examination of the defendant and of an expert witness on Mexican law there was a great deal of argument about a copy of the decree which defendant's counsel had offered, and plaintiff's counsel furnished a so-called authenticated copy which had been obtained during the investigation of the matter. It was apparently obtained from the parties who had furnished the papers to the defendant, and the plaintiff did not claim to have received it from the court itself. These papers were offered and admitted for the very purpose of, and in the process of, showing that they were not genuine papers issued by a court or disclosing court proceedings, and nothing in the record in any way indicates that the plaintiff vouched for them as being true. No estoppel or error in the admission of evidence appears in this connection.

With respect to the issue as to whether the plaintiff was the father of this child the defendant contends that the child is conclusively presumed to be the issue of her marriage to the plaintiff; and that even though a conclusive presumption is inapplicable the evidence is insufficient to overcome a rebuttable presumption to that effect. It is argued that a conclusive presumption exists because of sections 84, 85, 193 and 194 of the Civil Code. These sections provide, respectively, that a judgment of nullity of marriage does not affect the legitimacy of children conceived or born before the judg-

ment, that the issue of a marriage which is void or annulled or dissolved by divorce is legitimate, that all children born in wedlock are presumed to be legitimate, and that all children of a married woman born within 10 months after dissolution of the marriage are presumed to be legitimate children of that marriage. In support of this contention the defendant relies on *Dazey* v. *Dazey,* 50 Cal.App.2d 15 [122 P.2d 308], *Rivieccio* v. *Bothan,* 27 Cal.2d 621 [165 P.2d 677], *Estate of Walker,* 180 Cal. 478 [181 P. 792], *Estate of Mc-Namara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], *Williams* v. *Moon,* 98 Cal.App.2d 214 [219 P.2d 902], *Estate of Lee,* 200 Cal. 310 [253 P. 145], and *Hill* v. *Johnson,* 102 Cal.App.2d 94 [226 P.2d 655].

█ Sections 193 and 194 of the Civil Code apparently refer to valid marriages and it was held in *Estate of McNamara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], that the prima facie presumption of legitimacy provided for in section 194 may be overcome by other evidence. █ The only code sections directly dealing with the issue of a marriage which is annulled are sections 84 and 85 of the Civil Code. These sections do not specifically provide for any presumption but apparently relate to children who are, in fact, the issue of such a void marriage. If any presumption exists in such a case it would naturally be a rebuttable, rather than a conclusive, presumption.

Most, if not all, of the cases relied on by the defendant were cases where there was a valid marriage or where no issue of fact was presented as to whether or not the child was the issue of the parties. There is nothing in those cases which would establish as a controlling rule, under the facts of this case, that there was a conclusive presumption that plaintiff was the father of this child. Any presumption which would be applicable here would be a disputable one, and the issue as to whether the plaintiff was the father of this child was one of fact to be determined by the trial court.

█ The child was born on February 26, 1952. There is evidence that the plaintiff did not see the defendant from sometime in April, 1951 to June 1, 1951; that he had sexual intercourse with the defendant on June 1, 1951, and on the succeeding two days; that the defendant missed her first menstrual period on June 1, 1951, and missed her menstrual period thereafter until the child was born; and that within a week after June 1, she informed the plaintiff that she was pregnant as a result of their intercourse on or about June 1.

The plaintiff had not been with the defendant for nearly two months prior to June 1, 1951, and there was medical testimony that the defendant had become pregnant prior to June 1, 1951, that the intercourse between these parties at that time and thereafter had nothing to do with her pregnancy, and that their intercourse on the first three days of June could not have caused the pregnancy leading to the birth of this child. During the trial the plaintiff moved for an order directing the parties to this action, as well as the child, to submit to a blood test by some qualified person to be designated by the court. This motion was opposed by the defendant and was denied by the court. Evidence was received from which it could be reasonably inferred that the defendant had sexual relations with her husband, Davis, during the time when the child was probably conceived, and there was strong evidence indicating that she had such relations with Fink during the period in question. As was said in *Estate of McNamara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], "Where she has had intercourse with more than one man at or about the same time and a child has resulted, neither she nor anyone else can say with reasonable certainty which is the father. Any weighing of probabilities under such circumstance is but guessing." The question of whether or not the plaintiff was the father of this child was one of fact for the trial court and in view of the evidence presented its decision thereon cannot be said to be without support in the evidence.

■ Finally, the defendant contends that the court erred in denying her support money while a motion for a new trial was pending, and attoⱼneys' fees for the presentation of that motion. This relates only to the period from January 1, 1953 to April 1, 1953. It is argued that the court had power to provide for such support and attorneys' fees (*Dunphy* v. *Dunphy,* 161 Cal. 87 [118 P. 445] and *Harron* v. *Harron,* 128 Cal. 303 [60 P. 932]); that while the granting or denying of such support and maintenance is a discretionary matter the court may not act arbitrarily; and that in view of the previous and subsequent orders granting support money and attorneys' fees no good reason appears why defendant should have been denied such support and attorneys' fees for this three months' period.

On February 21, 1952, the court ordered the plaintiff to pay the defendant $250 per month for support until the trial of the action. Such payments were made up to December 31, 1952, when the judgment of annulment was entered. The

court also ordered the plaintiff to pay the defendant $1,500 for counsel fees and $250 for court costs, which were paid. On August 26, 1952, the plaintiff was ordered to and did pay a further sum of $1,000 for costs. The judgment entered on December 31, 1952, awarded the defendant's counsel $5,000 as additional attorneys' fees and $938.05 as additional costs, which amounts were paid. While the motion here in question was denied, on a subsequent motion the court awarded the defendant $3,000 for attorneys' fees on the appeal, with $1,450 for costs, and further ordered the plaintiff to pay the defendant $250 per month for her support commencing April 1, 1953 and continuing to the determination of the appeal. In view of the court's findings in this case, the allowances previously and subsequently made, and the legal questions involved in making the later allowances, it cannot reasonably be held that the court abused its discretion in refusing to make the further allowances covering the short period in question.

The judgment and the order appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 22, 1955, and appellant's petition for a hearing by the Supreme Court was denied April 27, 1955. Traynor, J., was of the opinion that the petition should be granted.