[Civ. No. 18194.   First Dist., Div. Two.   Mar. 30, 1959.]

MERRY KATRINKA WHITNEY, a Minor, etc., Appellant,
v. GERALD C. WHITNEY, Respondent.

Delger Trowbridge and Theodore M. Monell for Appellant.

Noal R. Gray and Bette P. Callahan for Respondent.

DOOLING, J.—Plaintiff, Merry Katrinka Whitney, through her guardian *ad litem,* Merry Kathleen Whitney, appeals by a settled statement from the minute order denying her motion for temporary support pending trial.

Merry Kathleen Whitney, the mother of appellant, married respondent on November 26, 1956, and separated on December 4, 1956. On February 11, 1957, the marriage was annulled. Thereafter, on September 27, 1957, appellant was born weighing 6 pounds and 9 ounces. Mrs. Whitney had her last normal menstrual period in the latter part of December 1956 and experienced a shorter than normal period in the latter part of January 1957. She did not discover that she was pregnant until early in March 1957.

Mrs. Whitney testified that she had sexual intercourse with respondent on November 26, 1956, and two or three times in December before the date of separation, December 4. She testified that there was further intercourse in February 1957 when "we went back for a reconciliation."

Respondent testified that she was without money and he let her stay in his home from February 19 to 22 but denied having intercourse with her during that period. Appellant makes no contention on this appeal based upon the former wife's testimony of intercourse during this period. Respondent further denied that he had sexual intercourse with Mrs. Whitney at any time.

An affidavit of a physician, referred to in the complaint, states that "it is my opinion, based upon experience, that said child could *possibly* have been conceived within a few days prior to or on December 4, 1956." (Emphasis ours.)

The order denying temporary support is appealable independently of the judgment but any implied finding concerning paternity is not determinative of that issue at the trial. (*Carbone* v. *Superior Court,* 18 Cal.2d 768, 772 [117 P.2d 872, 136 A.L.R. 1260].) While the jurisdictional prerequisite of parentage may be put in issue at a hearing on the motion, the evidence need not be so extensive as at the trial of the action. (18 Cal.2d p. 772.)

Appellant asserts that the conclusive presumption of legiti-

macy (Code Civ. Proc., § 1962, subd. 5) is applicable in this case and that therefore it was error to deny the motion.

Section 1962, subdivision 5, provides that:

"The following presumptions, and no others, are deemed conclusive:

" . . . . . . . . . . . . .

"5. Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate."

■ As stated in *Daniels* v. *Daniels*, 156 Cal.App.2d 371 [319 P.2d 662] : "The term 'cohabiting,' used in the statute, means, as set forth in the leading California case on the subject, *Estate of Mills*, 137 Cal. 298, 301 [70 P. 91], 'the living together of a man and woman ostensibly as husband and wife,' in which case the parties are not permitted to contradict or question the conclusive presumption created by the statute." (P. 373.) Section 1962, subdivision 5, refers to cohabitation at the time of conception of the child. (*Estate of McNamara*, 181 Cal. 82 [183 P. 552, 7 A.L.R. 313].)

■ It must be presumed that the parties had intercourse on December 3 or 4, 1956, the last day of opportunity of access of the husband and wife before their separation. (*Estate of McNamara, supra,* 181 Cal. 82, 88 ; *Estate of Mills,* 137 Cal. 298 [70 P. 91, 92 Am.St.Rep. 175].) "It is thoroughly settled by these and other cases that if there was access to the wife by the husband during the period that conception normally would occur, the presumption, except in certain cases not here relevant, is conclusive." (*Williams* v. *Moon,* 98 Cal. App.2d 214, 219 [219 P.2d 902] ; citing *Estate of Mills, supra; Estate of Walker,* 180 Cal. 478 [181 P. 792] ; *People* v. *Kelly,* 77 Cal.App.2d 23, 26 [174 P.2d 342] ; *Dazey* v. *Dazey,* 50 Cal.App.2d 15, 17 [122 P.2d 308] ; *People* v. *Hamilton,* 88 Cal.App.2d 398, 400 [198 P.2d 907].)

The child was born on the 297th day after December 4, the date of the separation of the parties. Appellant argues that the actual number of days should be disregarded and the months, without regard to their actual length, should each be calculated at 30 days, thus arriving at a figure of 294 instead of 297. The laws of nature take no account of man-made calendars and it is the 297 days which actually elapsed that must be determinative. This was the rationale of the holding in *Estate of McNamara, supra,* 181 Cal. 82, 92, that in construing section 194, Civil Code (which creates a rebuttable presumption that a child born within 10 months after the dissolu-

tion of a marriage is legitimate) the months should be calculated at 30 days each, thus arriving at the same maximum of 300 days in all cases for the application of this presumption. This holding is not authority that in calculating the days actually elapsed the months should be arbitrarily regarded as containing 30 days each, but quite the contrary.

The leading case in California on the application of the conclusive presumption of legitimacy provided in Code of Civil Procedure section 1962, subdivision 5, in cases of prolonged pregnancies is *Estate of McNamara, supra,* 181 Cal. 82. In that case the court posed the question of law to be decided (p. 89) : "Does the conclusive presumption of legitimacy apply where the period of gestation necessary in order that the husband be the father is not an impossible one, but is yet exceptional and not according to the usual operation of the laws of nature?"

The court answered this question in the negative holding that the conclusive presumption does not apply where the necessary period of gestation while a possible one is nonetheless exceptional and not according to the usual operation of the laws of nature.

The test thus laid down, as pointed out in the dissenting opinion of Mr. Justice Melvin in that case (181 Cal. 101) is burdened with uncertainty. In *McNamara* (181 Cal. p. 89) the question of fact to be decided was stated:

"Is the period of 304 days [the time involved in that case] greater than the usual or normal—not merely the average—period of gestation, that is, is it contrary to the usual operation of the laws of nature?"

The question which we must answer in this case therefore is whether 297 days after the last coitus is a "usual or normal—not merely the average—period of gestation?" To answer this question we must, of necessity, put a more definite construction upon the words "usual or normal." We start with the premise that the "usual or normal" is not "the average" (i.e., a fixed number arrived at by dividing the total of all known cases by the number of such cases) but a range between some minimum and some maximum period of gestation beyond which, although births may occur, they are of such infrequency that we may fairly say that they fall outside of the "usual or normal" range. ■ In determining this question we are entitled to consult "published technical works and articles by those recognized as authorities in this branch of human knowledge." (*Estate of McNamara, supra,* 181 Cal. p. 89.)

Most of the statistics in such works to which we have access deal with averages and hence are not particularly valuable in answering the question of the normal or usual range. However, they make one point clear which we must bear in mind in considering the question here presented. The length of most pregnancies is calculated from the first day of the last menstrual period, since normally, although not invariably, menstruation does not occur during pregnancy. There is a general agreement among the authorities that the average period of pregnancy calculated from the first day of the last menstruation is about 280 days. (Webster, Legal Medicine and Toxicology, p. 199; De Lee-Greenhill, Principles and Practice of Obstetrics, 9th ed., p. 86; 2 Taylor's Principles and Practice of Medical Jurisprudence, 11th ed., p. 30; 3 Wharton & Stille's Medical Jurisprudence, 5th ed., p. 39; Houts, Courtroom Medicine, p. 223.)

Many of the same authorities, however, point out that impregnation rarely, if ever, takes place at that time and the actual length of pregnancy from the time of coitus and subsequent fertilization of the ovum is for that reason a shorter period. In considering statistics of cases calculated from the first day of the last menstruation and applying those cases to the last day of coitus between husband and wife we must therefore subtract from the total days shown in such statistics such number of days as will normally elapse between the onset of the last menses and actual fruitful coitus.

Thus in 2 Taylor's Principles and Practice of Medical Jurisprudence, 11th ed., *supra*, we find at page 30:

"The usually accepted *average* is 280 days, which is the period used in clinical tables provided for estimating the date of term.

"The principal difficulty in the way of exact determination is the impossibility of fixing the exact moment of impregnation. Ovulation occurs about 14 days before the onset of the ensuing menstrual period, but it is subject to many influences, and there are cases in which it has seemingly occurred on almost any day in the intermenstrual cycle. It is generally accepted that the ovum has a very short life and probably does not survive more than 24 hours after ovulation unless it is fertilised. We have no means of knowing the exact moment of the union of the ovum and the spermatozoon which is the beginning of pregnancy.

". . . Labour usually starts about 280 days from the first day of the last menstrual period, so that the actual period of gestation is 270 days or less."

In De Lee-Greenhill, Principles and Practice of Obstetrics, 9th edition, *supra,* we find at pages 86-87:

"The most reliable datum from which to estimate the beginning of pregnancy is the date of fruitful coition and, reckoning from this day, pregnancy has been found to vary from two hundred and twenty to three hundred and thirty days; the average being two hundred and seventy days. From time immemorial women have reckoned two hundred and eighty days, ten lunar or nine calendar months, from the first day of the last period as the length of normal gestation. This is incorrect since ovulation occurs fourteen days before the next expected menses, the duration of pregnancy is two hundred and eighty minus fourteen, or two hundred and sixty-six days."

Webster, Legal Medicine and Toxicology, *supra,* at page 200, says: "The computations of various obstetricians as to the duration of pregnancy, dating the beginning from the date of a single coitus, lead to the average figure of 272 days."

Wharton and Stille in their Medical Jurisprudence, 5th edition, *supra,* volume III at page 39, summarize their conclusion from the many statistics that are set out in this work in the following language:

"From the foregoing facts we can but come to the conclusion that, though the normal period of gestation is 275 to 282 days from the end of the last menses, or 270 days from a single coition, the pregnancy may be protracted to 334 days after coitus, or 344 days after the menses . . ."

It will thus be seen that it is the conclusion of these authorities that in determining the length of pregnancy from fruitful coition 8 to 14 days should be subtracted from the figure when it has been calculated from the onset of the last menstruation. It seems somewhat significant that adding only seven days to the 297 here involved we arrive at 304 days, the exact length of pregnancy considered in *McNamara.*

Most of the statistics which are available to us deal with averages and maximum and minimum periods of pregnancy, e.g., 3 Wharton and Stille's Medical Jurisprudence, 5th edition, *supra,* where extensive statistics of this character are collected at page 29 (dating from a single coition) and page 28 (dating from the last day of the last menstruation). These statistics are of little value in the solution of the question here presented since they furnish no information as to the number of cases of prolonged gestation included in the averages.

In 2 Peterson and Haines, Text-Book of Legal Medicine

and Toxicology, at pages 66-67 more pertinent statistics have been set out. From these we learn that Merriman collected 150 cases in which the duration is counted from the date of the last menstruation. These showed five cases or 3.33 per cent in which birth occurred in the 37th week; 16 or 10.67 per cent in which it occurred in the 38th week; 21 or 14 per cent in the 39th week; 46 or 30.67 per cent in the 40th week; 28 or 18.67 per cent in the 41st week; 18 or 12 per cent in the 42d week; 11 or 7.33 per cent in the 43d week; and five or 3.33 per cent in the 44th week. In these cases nearly 50 per cent of the births occurred within seven days before or after the 280th day, or within the range of that accepted as the generally expected length of pregnancies. More important to the consideration of the question before us, the 43d week ends with the 301st day. If we subtract as little as seven days to approximate the length of pregnancy measured from the last menses to its length measured from the date of probable fruitful coition those cases listed as occurring in the 43d week after the last menstruation fall into the 42d week after fruitful coition and the 42d week ends with the 294th day. So calculated from the probable date of fruitful coitus in only five of these 150 cases or 3.33 per cent did pregnancy extend beyond the 294th day after the actual coition.

The same authors quote 40 cases collected by Reid in which the impregnation was the result of a single act of intercourse. In these 40 cases five or 12.50 per cent were delivered in the 38th week after the single coition; seven or 17.5 per cent in the 39th week; 18 or 45 per cent in the 40th week; six or 15 per cent in the 41st week; and four or 10 per cent in the 42d week ending on the 294th day. Thus in none of these 40 cases did the length of pregnancy after a single act of intercourse exceed 294 days.

Similarly the same authors cite 56 cases collected by Montgomery in which the date of fruitful intercourse was known, and used as the starting date, with the following results: one or 1.79 per cent born in the 35th week; two or 3.58 per cent in the 37th week; two in the 38th week; 10 or 17.84 per cent in the 39th week; 22 or 39.28 per cent in the 40th week; and nine or 16.7 per cent in the 41st week; eight or 14.28 per cent in the 42d week; and two or 3.58 per cent in the 43d week. Thus only two out of the 56 pregnancies observed extended beyond the 294th day after the known date of fruitful coition.

If we take the sum of these cases, adjusting the 150 calculated from the date of menstruation by subtracting seven to

approximate the date of fruitful coition, only seven out of 246 or 2.08 per cent or one out of every 50 extended beyond the 294th day.

Judge Woodside in a dissenting opinion in *Commonwealth* v. *Watts*, 179 Pa. Super. 398 [116 A.2d 844] at page 848 [116 A.2d] refers to a record of 14,079 cases calculated from the last menstrual period, found in Williams Obstetrics (1950), which text-book is not available to us. We therefore quote from that opinion (p. 848):

"Nicholson J. Eastman, M.D., a professor of Johns Hopkins University, states in the 10th Edition of Williams Obstetrics (1950) 'The average duration of human pregnancy, counting from the first day of the last menstrual period is about 280 days or 10 lunar months. Since the interval between the first day of menstruation and ovulation averages approximately 13 days, the mean duration of actual pregnancy, counting from the day of conception must be close to 267 days.'

"He refers to a record of 14,079 cases in which only 42 had pregnancy extending more than 31 days after the expected date. This would mean that only 3 cases out of a thousand had pregnancies extending more than 298 days computed from conception to birth."

In *McNamara*, 181 Cal. pages 89-91, the court reviewed several medical authorities who had assembled data on prolonged periods of gestation. The court concluded that since the authorities had particularly concerned themselves with cases exceeding 300 days this fact itself "strongly evidences the exceptional character of such cases . . ." (P. 90.) At page 91 the court refers to a study made by Von Winckel in 1900 and 1901 of 30,500 cases "in which as best we can judge from the references to the article, he found but thirty-one cases, or less than one-tenth of one per cent, wherein it was reasonably certain the period was 302 days or more."

Since the opportunity for calculating the length of pregnancy from a single act of intercourse is relatively infrequent we must assume that in the great preponderance of all such cases the length is computed from the last menses. Deducting the conservative figure of seven days to approximate such figures to the length of pregnancy from inseminating intercourse would reduce all cases calculated from the last menses which extended 302 days to 295 days in length from actual coition. While the decided cases generally have apparently taken no account in dealing with such statistics of the shorter length of pregnancies calculated from the date of fruitful co-

ition, in dealing with cases calculated from the last menses this factor must be considered if the conclusions are to be realistic.

No case in California since McNamara except *McKee* v. *McKee,* 156 Cal.App.2d 764 [320 P.2d 510], deals with a prolonged pregnancy. All of the other later cases deal with pregnancies shorter than the average. (*Anderson* v. *Anderson,* 214 Cal. 414 [5 P.2d 881]; *Murr* v. *Murr,* 87 Cal.App.2d 511 [197 P.2d 369]; *Dazey* v. *Dazey, supra,* 50 Cal.App.2d 15.) These latter cases are of no assistance in deciding the problem of an extended pregnancy. Nor does *McKee* v. *McKee, supra,* 156 Cal.App.2d 764, help us. In that case the period was 304 days as in *McNamara* and we held, as required by *McNamara,* that the conclusive presumption of legitimacy did not apply. The case in fact was decided by application of the rebuttable presumption of section 194, Civil Code.

■ It is our conclusion that, taking into account the available statistics and opinions of experts in the field, a pregnancy of 297 days calculated from the date of intercourse, as distinguished from the last menstruation, is sufficiently rare and infrequent to justify us in holding that it is not within the normal and usual range of pregnancies and hence that the trial judge's conclusion that the conclusive presumption of legitimacy does not apply under the facts of this case must be upheld.

Cases cited from other jurisdictions (which have no conclusive presumption) in which legitimacy was determined in cases of extended pregnancy are no more helpful in the solution of this problem than is *McKee* v. *McKee, supra,* 156 Cal. App.2d 764, in which we affirmed an adjudication of legitimacy where the length of such pregnancy was 304 days as supported by the evidence although conceding that the conclusive presumption of legitimacy was not applicable.

Since we have concluded that the conclusive presumption does not here apply the trial judge's finding from the conflicting evidence in making his interim order must be accepted on appeal. As we have heretofore pointed out this order will have no legal effect upon the final determination of the issue of paternity after a full trial of that issue on the merits. (*Carbone* v. *Superior Court, supra,* 18 Cal.2d 768, 772.)

Order affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1959.