[Civ. No. 4700.   Fourth Dist.   June 7, 1954.]

JOHN DOE HUGHES, a Minor, etc., Respondent, v.
WESLEY L. HUGHES, Appellant.

782

Vizzard, Baker & Sullivan for Appellant.

Mack, Bianco & King as Amici Curiae on behalf of Appellant.

James B. Fredericks for Respondent.

Dorris, Fleharty, Phillips & Underhill and Thomas Underhill as Amici Curiae on behalf of Respondent.

MUSSELL, J.—This is an action brought for the support of an unborn child by its mother as guardian *ad litem* and involves a question of the legitimacy of the child.

Annabelle Harbaugh (the mother) and Frank Harbaugh were married in 1932 and there are two children living, the issue of said marriage. They are aged 18 and 20 years. The Harbaughs lived together continuously from the time of the marriage until the latter part of September or some time in October, 1952. Mrs. Harbaugh testified that the separation was during the latter part of September of that year and her husband stated that they lived together in Lancaster for about two weeks during the first part of October, before the separation. Both Mr. and Mrs. Harbaugh admitted that there had been sexual intercourse between them during 1952 and up to the time of their separation. Mrs. Harbaugh testified that she did not remember whether she had separated from her husband when she first met the defendant Wesley Hughes; that she first had sexual intercourse with defendant Hughes on October 6th or 7th, 1952, at a motel in Bakersfield; that she called Hughes on the telephone on Octboer 19th and told him that she thought she was pregnant. Defendant Hughes testified that she called him on the telephone a week after the 8th of October and told him that she thought she was pregnant and that he should come down to see her. She first visited a doctor in February, 1953, and the child, who

was named Cheryll Lynn Harbaugh, was born on June 29, 1953. Mrs. Harbaugh and Hughes lived together in Oildale for several weeks commencing about the middle of October, 1952, and defendant Hughes admitted several acts of intercourse with Mrs. Harbaugh occurring after October 7, 1952. The Harbaughs became reconciled in February or March, 1953, and at the time of the hearing herein were living together. The child was living with them, was accepted by Harbaugh, and was being raised by him as his daughter.

Frank Harbaugh testified that in 1934 or 1935 an operation was performed upon him ''making him sterile.'' However, the doctor who performed the operation was not called as a witness and there was no medical testimony as to the exact nature of the operation.

Dr. Ogden, called as a witness on behalf of plaintiff, testified that he had examined Frank Harbaugh on July 6, 1953, and saw two scars near the scrotum where a vasectomy is performed; that the purpose of a vasectomy was either for sterilization or a type of surgery of the bladder and the kidneys; that he tested a specimen of semen from Harbaugh and found no sperm therein. It was his opinion that Frank Harbaugh was sterile as of the time of the hearing and upon being asked a hypothetical question based upon a vasectomy performed 16 years before stated that in his opinion Frank Harbaugh had been sterile for 16 years.

Dr. Harry Bishop who was called on behalf of the defendant testified that it was possible that a vasectomy to induce sterilization could be unsuccessful; that he had personally observed such a case and had read of others; that sterility might occur without an operation to induce it; that if sterility had been ascertained as late as July 6, 1953, it would not necessarily have to be attributed to some operation performed 16 or 17 years earlier, and that it was a matter of surmise.

At the hearing held on an order to show cause the trial court ordered the defendant to pay the sum of $40.00 per month for the support of the plaintiff minor pending trial and allowed plaintiff attorney's fees. Defendant's appeal is from this order and judgment and his contention is that there is a conclusive presumption that Frank Harbaugh is the father of Cheryll Lynn Harbaugh under Code of Civil Procedure, section 1962, part 5, and that even if the conclusive presumption can be rebutted by proof of the husband's sterility rather than proof of impotency, the record

does not support a finding of sterility of Frank Harbaugh at the time the child was conceived.

Section 1962, subdivision 5, of the Code of Civil Procedure, insofar as is material here, provides as follows:

"*Specification of conclusive presumptions.* The following presumptions, and no others, are deemed conclusive:

"5. The issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate."

The stated presumption is conclusive, and with certain exceptions evidence cannot be received to the contrary. (*Hill* v. *Johnson,* 102 Cal.App.2d 94, 95-96 [226 P.2d 655].) ▪ As was said in *Williams* v. *Moon,* 98 Cal.App.2d 214, 217 [219 P.2d 902], quoting from *Hargrave* v. *Hargrave,* 9 Beav. 552:

" 'A child born of a married woman is in the first instance presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse.' And the same rule is supported by the authorities in this country." And on pages 218-219, quoting from *Estate of Walker,* 180 Cal. 478 [181 P. 792]:

" 'There is no doubt but that the presumption of legitimacy goes at least to this extent, that if it appear that by the laws of nature it is possible that the husband is the father (that is, if it appears that the husband had intercourse with the mother during the period of possible conception), legitimacy is conclusively presumed, and no guessing or weighing of probabilities as to paternity because of relations between the mother and other men will be permitted. The only exception to this, if it really be an exception, is where it is clear that, although the husband had intercourse with the wife, yet by the laws of nature it is impossible for him to have been the father, as, for instance, where husband and wife are white and the child a mulatto.' . . .

" ' . . . the true rule in America, as well as England, is, we believe, that if it is possible by the laws of nature for the husband to be the father (that is, if there was coition and no impotency), no inquiry will be permitted into the probabilities

of the case one way or the other, but the presumption of legitimacy is conclusive; and, on the other hand, it is always permitted to show that it was not possible by the laws of nature for the husband to be the father, as by showing impotency on his part, want of intercourse during the possible period of conception, or that the child is of a race or color such that it could not have been conceived by the husband.

" 'The fact that it was not possible by the laws of nature for the husband to be the father, where that fact is in issue, is to be inquired into in the same manner as any other fact which is the subject of judicial inquiry, and any competent evidence relevant to the question is admissible as in other cases, it being the rule, however, in California, as in many jurisdictions, that neither the husband nor the wife is competent to testify to lack of intercourse.' "

In *People* v. *Hamilton,* 88 Cal.App.2d 398, 400 [198 P.2d 907], it was held that the courts of this state have established the rule that where the laws of nature make it possible that the husband is the father, the presumption is conclusive, but that where the laws of nature do not, only the disputable presumption applies, and evidence by the proper parties is admissible. Citing *Estate of Walker,* 180 Cal. 478 [181 P. 792]; *Dazey* v. *Dazey,* 50 Cal.App.2d 15 [122 P.2d 308]; *Estate of McNamara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313]; *Anderson* v. *Anderson,* 214 Cal. 414 [5 P.2d 881].

In the instant case we are concerned only with two of the exceptions to the rule stated in section 1962, subdivision 5, of the Code of Civil Procedure, namely: (1) Where the husband is incompetent; and (2) Where it is not possible by the laws of nature for the husband to be the father.

The word "incompetent" has many definitions (Words and Phrases, perm. ed., vol. 20, p. 532 et seq.) and in the 1952 pocket part of said volume it is defined as:

" 'Incompetency' is a relative term without technical meaning which may be employed as meaning disqualification, inability, incapacity, lack of ability, legal qualification, or fitness to discharge the required duty. It means want of physical, intellectual or moral ability, insufficiency, inadequacy, want of legal qualifications or fitness. It means general lack of capacity or fitness, or lack of the special qualities required for a particular purpose. *Appeal of School Dist. of City of Bethlehem,* 151 Pa.Super. 522 [30 A.2d 726, 728, 729]."
Its meaning as used in the exception stated in *Williams* v.

*Moon, supra,* 217, is not therein set forth. However, as defined in Webster's International Dictionary it means wanting in adequate strength, power, capacity, means, qualifications or the like; incapable. ▮ Under this definition it is clear that a husband who is sterile and therefore incapable of being a father of a child is "incompetent."

"Sterile" is defined in Maloy's Medical Dictionary for Lawyers as "barren, not fertile; free from micro-organisms." "Sterility," according to Black's Law Dictionary, means "barrenness; incapacity to produce a child." "Sterilization" is defined as "making sterile or incapable of reproduction" in Ballentine's Law Dictionary.

In *Estate of McNamara,* 181 Cal. 82, 96 [183 P. 552, 7 A.L.R. 313], the court said:

"There is one class of cases where it is recognized in this country at least, that the husband is not to be taken as the father of the child, even though he had intercourse with his wife during the normal period of conception. That instance is where the husband and wife are of the same race, as for instance, white, and it appears that the wife has had intercourse with a man of another race, as, for instance, a negro, and the child is of mixed blood. (*Watkins* v. *Carlton.* 10 Leigh (Va.) 560; *Bullock* v. *Knox,* 96 Ala. 198 [11 So. 339]; *Wright* v. *Hicks,* 12 Ga. 161 [56 Am.Dec. 451]; *Cross* v. *Cross,* 3 Paige (N.Y.) 139 [23 Am.Dec. 778].) The reason why the conclusive presumption is not applied in such instances is that the element of indeterminability which is the reason for the presumption in the ordinary case is absent. It is clear that the husband is not the father. The actual fact, in other words, is capable of definite determination, and for this reason the conclusive presumption which is a substitute for such determination is not properly applicable."

Sterility is a condition which, if established, renders it impossible to procreate and it is clear that a husband who is sterile during the period of conception cannot become a father. The same reasoning applies in such a case as is found in the McNamara decision. Where sterility is capable of definite determination, the conclusive presumption of legitimacy which is a substitute for such determination is not properly applicable. ▮ As was said in *Bullock* v. *Knox,* 96 Ala. 198 [11 So. 339-340]:

"The modern authorities sustain the propositions that the presumption of legitimacy from the birth of a child during marriage may be rebutted by evidence which clearly and con-

clusively shows that the procreation by the husband was impossible; and that it is competent to show that according to the course of nature, the husband could not be the father.''

■ The order from which the appeal was taken in the instant case is for payment of attorney's fee and support of the child pending trial. Such an order is appealable. It is determined upon a record of its own and results in an appealable judgment independent of the final judgment in the action. (*Carbone* v. *Superior Court*, 18 Cal.2d 768, 772 [117 P.2d 872, 136 A.L.R. 1260].) It is there said that although such an order implies a finding of the existence of the relationship (parentage), the proceeding need not be so complete nor the evidence so extensive as upon the trial of the issues of the case and the order does not, therefore, determine those issues nor affect the final judgment.

■ The testimony in the instant case upon the question of the sterility of Frank Harbaugh was sufficient in our opinion to support the temporary order made. .

Judgment and order affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1954.