[Civ. No. 24785. Second Dist., Div. Three. Dec. 9, 1960.]

JUDY BENES, Plaintiff and Respondent, v. SAMUEL J. YOUNG, Appellant; ANDREW B. BENES, Cross-defendant and Respondent.

Wolver & Wolver for Appellant.

Dicker & Dicker for Plaintiff and Respondent.

No appearance for Cross-defendant and Respondent.

BISHOP, J. pro tem.*—We have three appeals, two from an order granting a motion directing plaintiff's husband to present himself to a doctor appointed by the court for an examination to determine whether he could physically be the father of plaintiff's child, and the third from an order requiring the defendant to pay the plaintiff attorney fees and support her child. ■ The two appeals first mentioned, one from the filed order, the other from its minute entry, must be dismissed because they are not appealable. (See *Southern Pacific Co.* v. *Oppenheimer* (1960), 54 Cal.2d 784 [8 Cal. Rptr. 657, 356 P.2d 441].) They are, however, reviewable on the appeal from the order to show cause why the defendant should not support the child allegedly his, which is an appealable order. (*Hughes* v. *Hughes* (1954), 125 Cal.App.2d 781, 787 [271 P.2d 172, 175].)

■ In the complaint that initiated the action, the plaintiff alleged that the defendant was the father of her unborn child. The defendant, professing insufficient information, knowledge or belief to answer (otherwise) denied plaintiff's allegation, and added that plaintiff's husband was living with and at all times had physical access to her, and that he was not incapable of being the child's father. This same contention is made in defendant's cross-complaint for a declaratory judgment wherein he makes plaintiff and her husband cross-defendants. This contention is the central issue in the case, essential, of course, to the indisputable presumption of subdivision 5, of section 1962, Code of Civil Procedure, that the child's father must be plaintiff's husband and not the defendant.

Simultaneously with filing her complaint, the plaintiff obtained the order to show cause referred to. Before the order to show cause came on for hearing the defendant sought an order requiring the plaintiff's husband to submit himself "and his presence" for a physical examination, and the furnishing of semen, before a Dr. Jacques S. Gilbert. The husband opposed the motion by an affidavit in which he reported that on June 30, 1959, he had submitted himself to a physical examination by the Southern California Permanente Medical Group, and again, in October, to Dr. Henry W. Ephraim, in each instance giving a sperm specimen. Although opposed to a doctor selected by the defendant, he expressed a willingness

*Assigned by Chairman of Judicial Council.

to submit to one more examination before a court-appointed doctor, painful, humiliating and degrading though the particular examination is. A written order was made and filed December 3, 1959, and then noted in the minutes, granting the motion for the physical examination, but providing that it be held before Dr. Marcus Crahan, a doctor selected by the court.

Some two days were consumed in the hearing instituted by the order to show cause. The evidence that the plaintiff and her husband had had no intercourse for some two years before the birth of the child, and that she had had repeated intercourse with the defendant, and no one else, ever (except with her husband in times past), was properly admitted *only if* her husband was not physically able to be a father. (*Williams* v. *Moon* (1950), 98 Cal.App.2d 214, 219 [219 P.2d 902, 904-905] ; *Hill* v. *Johnson* (1951), 102 Cal.App.2d 94, 95 [226 P.2d 655, 656].) It was error, therefore, to admit this evidence over defendant's objections, *unless* there was substantial evidence that plaintiff's husband was impotent. If there was no such evidence, we add, we need not be concerned by the error referred to, for the conclusive presumption would then prevail, and the order would have to be reversed, error or no. We add, further, that when questioned about his relations with the plaintiff, the defendant took the Fifth Amendment.

With such earnestness and understandable reiteration, defendant's counsel urges that there is no substantial evidence to support the trial court's announcement that ''For the purpose of this order to show cause only, the Court will find . . . the husband of the plaintiff to be impotent and incapable of causing pregnancy.'' The reasons advanced in support of this thesis are those properly addressed to the trier of facts, however, and are not persuasive when presented to us. Rather by way of illustration than in an endeavor to paint a picture complete in every detail, we touch on the evidence given by the three doctors who testified.

The doctors who made the first and fourth examination of semen obtained from the husband did not appear as witnesses. Of the three who did appear only Drs. Ephraim and Crahan had semen that came from the husband. The qualifications, as a doctor, of Dr. Crahan, the court's appointee, were stipulated to by counsel, with only this reservation on the part of defendant's counsel: ''We desire to examine him on one or two aspects but we consider him an expert.'' He testified that a specimen was obtained from the plaintiff in his (the doctor's) presence. On cross-examination he explained that the husband

was in a room adjacent to that in which he was, all of the 30 minutes that it took for the production of the specimen. None was produced during the first 20 minutes. It was fresh when he (the doctor), examined it, within a minute after its production. Plaintiff's husband testified that he furnished Dr. Crahan with a specimen, the doctor being present in his office, next door. A heated receptacle was given him to begin with and after the elapse of some 15 or 20 minutes without results, the doctor came into the room and gave him a reheated bowl.

Dr. Ephraim, the Chief of Staff of the American Hospital, requested Mr. Neves, its Chief Medical Technologist, to make a sterility examination of plaintiff's husband. He put him in a restroom next to the laboratory and, in 10 or 15 minutes, he brought him a fresh specimen. The defendant, naturally, is pleased that Dr. Crahan was more successful in finding some spermatozoa than was Mr. Neves, but would brush aside the facts reported by the doctor that they were either not whole or were immobile by criticizing his method of examination—smears instead of the use of a hanging slide. Perhaps Dr. Crahan was right in testifying that his method did not cause the spermatozoa to become immobile. His credibility and the weight to be given his testimony were for the trial court.

Dr. Gilbert, defendant's nominee, was a witness who had not had the benefit of a specimen from the husband to examine, so necessarily was limited to the expression of scientific facts and opinions. For example, he began one answer: "Well, the instinctal impulses for reproduction follows the law of propagation of life and multiplication of species." We entertain no doubt that the trial judge listened to him. In part, Dr. Gilbert and Dr. Crahan had different answers to the same questions. The argument that he was much wiser than either of the other doctors was one quite proper for the defendant to make. The trial court recognized the sharp conflict in the evidence. A trial judge's life would be much simpler if such conflicts never arose. The burden, however, rests on the trial court; the conflict is resolved there, not on appeal, however earnest and able the argument.

Evidence of the physical inability of the husband to become a father does not have to establish that fact beyond all reasonable doubt. In the early case of *Estate of Walker* (1919), 180 Cal. 478, 491-492 [181 P. 792, 797] we read: "It should perhaps be noted that when it is said that the presumption of legitimacy is conclusive if it were possible by the laws of nature for the husband to be the father, it is not meant that the proof

of the fact of such impossibility must itself be beyond possibility of doubt. The two things are very different. The fact to be proven is that the husband could not by the laws of nature be the father, as, for example, because of lack of intercourse with the mother. The evidence of that fact is not required to be such as to prove it beyond any possibility of doubt. A jury would be justified in finding a lack of intercourse, with the consequence that it was impossible that the husband be the father upon evidence which did not show such lack beyond possibility of question. The presumption of legitimacy is strong and the proof of impotency or nonintercourse must be clear and satisfactory, but this is all. The presumption does not operate to change the general rule that in civil cases the issue is to be determined upon the preponderance of evidence, but like other presumptions operates under and beneath that rule.''

In *Hughes* v. *Hughes, supra,* 125 Cal.App.2d 781 [271 P.2d 172], we have a case much like ours, a mother seeking support for her unborn child from one not her husband. The appeal was from an order for the payment of attorney fees and support of the child pending trial. We quote this paragraph (p. 787 of 125 Cal.App.2d, p. 175 of 271 P.2d) : ''The order from which the appeal was taken in the instant case is for payment of attorney's fee and support of the child pending trial. Such an order is appealable. It is determined upon a record of its own and results in an appealable judgment independent of the final judgment in the action. (*Carbone* v. *Superior Court,* 18 Cal.2d 768, 772 [117 P.2d 872, 136 A.L.R. 1260].) It is there said that although such an order implies a finding of the existence of the relationship (parentage), the proceeding need not be so complete nor the evidence so extensive as upon the trial of the issues of the case and the order does not, therefore, determine those issues nor affect the final judgment.''

We conclude, therefore, that, for the purposes of the order made after the hearing on the order to show cause, the evidence fully supported the finding expressed in the order; that it was not error for the trial court to direct the physical examination by a doctor selected by it rather than the one put forward by the defendant; and that the denial of the motion, made at the conclusion of the hearing, that a further examination be ordered before a ruling was made, was not erroneous. The defendant has not been denied due process on the hearing had to date. Nor is the effect of the order appealed from to render

res judicata the issues yet to be tried nor does our decision establish, as the law of the case, that, a further physical examination need not be ordered.

The order of January 7, 1960, is affirmed. The appeals from the order dated December 3, 1959, and from the minute order of the same date are dismissed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied December 27, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1961. Schauer, J., was of the opinion that the petition should be granted.