[Civ. No. 26153.   First Dist., Div. Four.   July 30, 1969.]

S. D. W., a Minor, etc., Plaintiff and Respondent, v. ROLAND HOLDEN, Defendant and Appellant.

William F. Hannon for Defendant and Appellant.

James A. Kennedy for Plaintiff and Respondent.

DEVINE, P. J.—Defendant Roland Holden appeals from a judgment entered after trial by jury, determining that he is

the father and is liable for the support of respondent, a minor child. The mother of the child lived with her husband in their residence during the time of the child's conception and for many months thereafter. When she divorced her husband, she alleged separation at a date long subsequent to the birth and that S. D. W. was the child of the marriage. She obtained provision for the child's support in the decree of divorce. The husband did not make the payment decreed. The wife brought this action and was supported in it by her ex-husband's testimony. There was admitted in evidence, over objection, testimony by both of the former spouses that matrimonial intercourse had ended about three months before the date of conception. Also, over objection, there was admitted evidence of a blood test which purported to show that the husband is not the father.

There was testimony from the mother that she had sexual intercourse with defendant and with no other man during the period of conception. Defendant admitted the relationship, but testified that it began some months later. There was testimony of admissions made by defendant that he was the child's father. He denied these admissions, although not in a very positive way.

The jury was instructed that it could consider the blood test result as evidence that the husband could not be the natural father of the child.

In the matter of the presumption of legitimacy, the jury was instructed in terms of Evidence Code section 621 that: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate." The jury was told that the "word 'cohabiting' has been interpreted by the courts of this State to mean 'to dwell or live together as husband and wife.' It is for you, the jury, to determine from the evidence whether or not such a state of fact existed in this particular case at the time in question." The testimony of the former husband and wife that they resided in the same home during the relevant period was uncontradicted. The jury must have understood, therefore, that the factual question upon the subject of "cohabiting" which they were to decide related to sexual intercourse, and not to dwelling together. The wife had testified that the two kept the same residence but said, "we did not actually live together as man and wife."

The law of this state is that cohabiting means living together ostensibly as man and wife. To cohabit is simply " to

live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also." (*Kusior* v. *Silver*, 54 Cal.2d 603, 612 [7 Cal.Rptr. 129, 354 P.2d 657] ; *Kilburn* v. *Kilburn*, 89 Cal. 46, 50 [26 P. 636, 23 Am.St.Rep. 447].) If they are so living together, as admittedly husband and wife were in this case, evidence of non-intercourse is not permitted in this state. (*Kusior* v. *Silver, supra* at p. 610; *Estate of Walker*, 180 Cal. 478, 491 [181 P. 792] ; *Estate of Mills*, 137 Cal. 298 [70 P. 91, 92 Am.St. Rep. 175].) ■ It was error to admit the evidence of non-intercourse. The subject was improperly submitted to the jury.

The blood test result, too, was inadmissible. *Jackson* v. *Jackson*, 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289], held that, in the case of a cohabitation of less than four days, blood test evidence was admissible for the purpose of showing impossibility of conception during that time, but it did not change the rule excluding this type·of evidence in cases of settled cohabitation. (Witkin, Cal. Evidence (2d ed. 1966) § 656, p. 618.)

At this point, we take notice of the thoughtful dissenting opinion in which the proposition is advanced that the conclusive presumption described in section 621 of the Evidence Code does not apply because appellant did not present evidence that the husband of the child's mother was "not impotent." It is said in the dissenting opinion that the burden of producing evidence of the "non-impotency" of the husband rested upon defendant because of section 500 of the Evidence Code, which reads: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

We have found no case in which there has been discussion of the burden of supplying evidence as to the impotency or non-impotency of the husband in respect to Evidence Code section 621. It is our conclusion that the burden of going ahead with the evidence does not rest upon the third party, the defendant, in the paternity action, and particularly so in this case. We say in this case particularly because the testimony of the wife was that she and her husband had had intercourse up to about three months before the conception of the child. After the child was born, the husband told appellant that he "didn't think" the child was his, a statement rather inconsistent with a state of impotency. But we find also

that there are reasons why section 500 of the Evidence Code should not be construed as requiring appellant, the third party, to produce evidence as to the potency or impotency of the husband. This subject is not part of his pleading. His pleaded defense is simply a general denial. This, of course, is not conclusive. Section 500 may, under certain circumstances, require one to produce proof of something which he has not pleaded. The essential considerations are those of "policy and fairness based on experience in the different situations." (9 Wigmore on Evidence, § 2486, p. 275.) An overriding social policy, that of preventing the integrity of the family from being impugned, supports the rule of section 621. (*Kusior* v. *Silver*, *supra*, at p. 619.) To require that "non-impotency" of the husband be proved affirmatively would weaken immeasurably the effect of the statute.

The principle established by section 621 is of great antiquity, having been a maxim of the Roman law, which was copied by the common law. (*Estate of Walker*, 180 Cal. 478, 485 [181 P. 792].) It is referred to in 2 Coke Upon Littleton, section 244a. It has been remarked in *Estate of Mills*, 137 Cal. 298, 301 [70 P. 91, 92 Am.St.Rep. 175], that Shakespeare was familiar with the rule, for he made reference to it in King John, act I, scene 1: "*King John.*—Sirrah, your brother is legitimate; Your father's wife did after wedlock bear him; And, if she did play false, the fault was hers; Which fault lies on the hazards of all husbands That marry wives."

We have in mind that in all of the cases in which the courts and counsel have struggled with the problem of the "conclusive presumption" or rule of substantive law contained in section 621, although the courts have recognized that when the laws of nature made procreation impossible, such as by sterility that is demonstrable after a surgical operation (*Hughes* v. *Hughes*, 125 Cal.App.2d 781 [271 P.2d 172]), no one apparently has suggested that the rule may be avoided by placing of the burden of proof of non-impotency on a third party.

There is also to be considered the principle that the burden of proving a fact is ordinarily put upon the party who has peculiar means of knowledge. (9 Wigmore on Evidence, § 2486, p. 275.) Obviously, the party in this case is not the appellant.

Since the presumption of legitimacy sometimes finds its most important application in matters involving distribution of property under wills or by descent, it must be invoked by persons who would be quite unable to present evidence of the

potency of male testators or intestates. Often, no doubt, such proof would be unavailable by the passage of years, if for no other reason.

We apprehend that to require proof of the ''non-impotency'' to be supplied by a third party would be to create difficulties and to give opportunities for multifold mischiefs. In the first place, such evidence is not only intimate, but uncertain as well and difficult of being rebutted. No doubt expert testimony would be required (and that testimony expensive and in many cases probably speculative). In the second place, it is not difficult to imagine the opportunities for recrimination, fraud and blackmail which could result from making the rule established in section 621 subject to the vagaries of evidence in this difficult kind of case. We observe that in the case before us, although it may have been honestly prosecuted against appellant, the wife was quite willing to use the services of the courts in obtaining a decree of divorce ordering the husband to pay for the child's support.

Evidence Code section 621 may in individual cases prevent the imposition of financial responsibility on one who bears a moral responsibility for it; but the overriding policy of the law applicable to cases of inheritance as well as filiation, as expressed in section 621, in our opinion calls for the interpretation of that statute in the manner set forth above. It is worthwhile remarking, too, that the child's status as the legitimate offspring of the spouses who shared their home when the child was conceived and born has been preserved.

But if the social policy which finds expression in section 621 and which has so long been established in the law is to be modified to the extent of allowing the results of blood tests in a case in which a child whose mother is cohabiting with her spouse, we believe the Legislature should make that decision. In 1953, the Legislature, in adopting in part the Uniform Act on Blood Tests to Determine Paternity (then Code Civ. Proc., §§ 1980.1-1980.7; now Evid. Code, §§ 890-897), deliberately omitted section 5 of the act, which provides: ''The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the [blood] tests, show that the husband is not the father of the child.'' (9 Uniform Laws Annot. 112.) It seems to us that since the Legislature chose not to make blood tests acceptable evidence, we should not, by an unprecedented decision, make such tests admissible

by indirection, that is, by permitting them upon production of preliminary evidence of a more questionable character on the subject of impotence.

The judgment is reversed, with direction to the trial court to dismiss the action.

Rattigan, J., concurred.

CHRISTIAN, J.—I dissent.

The evidence heard by the jury showed, with overwhelming force, that appellant is in fact the natural father of respondent minor child. Blood test evidence establishes with scientific certainty that the man to whom the mother was married at the time of conception is not the father. Yet the judgment is to be reversed with directions to dismiss the action. To my mind, the result is grievously unjust; it deprives the child of his right to paternal support and allows appellant, the actual father, to escape his lawful obligation. Perhaps worse, the judgment which the trial court will be compelled to enter will be untrue; it is based only upon the presumption of legitimate parentage created by Evidence Code section 621—a presumption which in this case we know to be directly contrary to the facts.

We should be uneasy when the law appears to compel settlement of a litigant's rights on the basis of a presumed fact which is manifestly fictitious and untrue. This case is the first in which the interrelationship of the applicable presumptions has been fully presented to an appellate court since the enactment of the Evidence Code. There is no statute declaring that the social policy in favor of legitimacy of children is always superior to the social policy in favor of allowing an illegitimate child to secure just paternal contribution to his support. It is therefore our opportunity and duty to analyze the effect of the new enactment to determine whether it has changed the doctrines laid down in the older authorities referred to by the majority.

Appellant contends that because the child's mother was, at the time of conception, married to J.R.W. the case is governed by the conclusive presumption of legitimacy set forth in Evidence Code section 621. Hence, it is argued, the court erred in admitting blood test evidence which excluded the possibility that the child was fathered by the husband. A subsidiary contention is that because the conclusive presumption of legitimacy applied, it was error to admit testimony of the mother

and J.R.W. that they did not have sexual relations during the time when conception must have occurred (citing *Estate of Mills* (1902) 137 Cal. 298 [70 P. 91, 92 Am.St.Rep. 175]; *Hill* v. *Johnson* (1951) 102 Cal.App.2d 94 [226 P.2d 655], overruled on another ground, *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 616 [7 Cal.Rptr. 129, 354 P.2d 657]). In admitting the evidence complained of, the trial court expressed the view that in *Jackson* v. *Jackson* (1967) 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289], the Supreme Court had "changed the law" and that the presumption set forth in Evidence Code section 621 no longer was conclusive as against blood test or. other evidence that legitimate parentage was impossible.

The *Jackson* case does not so hold. The Supreme Court acknowledged the existence of the presumption and declared it to have the force of a "rule of substantive law" (*Jackson* v. *Jackson, supra,* 67 Cal.2d at p. 247); but blood test evidence was held to be admissible in that case because it was circumstantial evidence tending to prove that conception did not occur in the three- or four-day period during which the husband and wife involved in that case had cohabited. No such situation is presented here and Evidence Code section 621 was potentially applicable (*Kusior* v. *Silver, supra,* 54 Cal.2d 603; *Hess* v. *Whitsitt* (1967) 257 Cal.App.2d 552 [65 Cal.Rptr. 45]; see Note, *California's Conclusive Presumption of Legitimacy* (1968) 19 Hastings L.J. 963). But the trial court's misunderstanding of the *Jackson* decision does not call for reversal of the judgment if an erroneous *ruling* does not appear from the record presented to us. In order for the presumption to come into play, it is not only necessary that the child be "the issue of a wife cohabiting with her husband"; it is also necessary that the husband be "not impotent." (Evid. Code, § 621.) The record before us is absolutely silent as to the potency of the husband. The question of potency was not mentioned in counsel's objections to the evidence now complained of; evidence on the point was not elicited from either the mother or the husband, both of whom testified.

Appellant's attempt to invoke the conclusive presumption of legitimacy asserted a defense based upon a "rule of substantive law" (*Jackson* v. *Jackson, supra,* 67 Cal.2d 245, 247). This defense raised subsidiary questions of fact concerning cohabitation during the crucial period and the potency of the husband (cf., *Hughes* v. *Hughes* (1954) 125 Cal.App.2d 781 [271 P.2d 172], in which the court for present purposes

equated impotence with sterility). Before the adoption of the Evidence Code, it was the rule that "the litigant *attacking* legitimacy may prove impotency of the husband" (McBaine, California Evidence Manual (2d ed. 1960) § 1273 [italics added]). But the Evidence Code now provides that "a party has the burden of proof as to each fact the existence or non-existence of which is essential to the . . . defense that he is asserting." Here the fact of J.R.W.'s potency was essential to the defense that appellant was asserting. (Evid. Code, § 500.) Where nothing was presented to the trial court on the question of potency, appellant did not sustain the burden of proof which Evidence Code section 500 placed upon him as to that issue. So far as this record discloses, therefore, the presumption created by Evidence Code section 621 does not arise. All otherwise admissible evidence of the child's paternity was properly to be received, and the issue of paternity was to be determined according to the jury's appraisal of that evidence.

It could plausibly be contended that the burden of proof as to potency was shifted by the presumption that a child of a married woman is legitimate (Evid. Code, § 661). It is true that the rebuttable presumption of legitimacy created by section 661 is designed to "implement some public policy" and hence it affects the burden of proof (Evid. Code, § 605). It is also true that the potency of the mother's husband is a possible inference to be drawn from the presumed legitimacy of the child. But it is not the only possible inference; legitimacy could also result from adoption (Civ. Code, § 228) or from conception brought about by artificial insemination (*People v. Sorensen* (1968) 68 Cal.2d 280, 289 [66 Cal.Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093]). Where the status of legitimacy presumed to exist under section 661 does not logically depend upon the potency of the mother's husband, the burden of proving cohabitation and potency for purposes of bringing the conclusive presumption into the case is not shifted: the party claiming the benefit of the conclusive presumption has the burden of proving that it is applicable.

I would affirm the judgment.