[Civ. No. 61975. Second Dist., Div. Five. Dec. 8, 1981.]

VINCENT B., Plaintiff and Appellant, v.
JOAN R. et al., Defendants and Respondents.

COUNSEL

Lawrence & Lawrence and Sull Lawrence for Plaintiff and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Ira H. Lurvey and Scott Z. Zimmermann for Defendants and Respondents.

## OPINION

**ASHBY, J.**—Respondents Joan R. and Frank R. were married in May 1961. They remained married, and cohabited as man and wife until separation and divorce in 1974. A boy, respondent Z. R., was born to the marriage on May 11, 1970, and lived with Joan and Frank until the separation. Joan has custody of the child.

In May 1977 appellant Vincent B. filed this action "To Establish Father and Child Relationship and for Visitation." He alleged that he, not Frank, is Z.'s father, and sought a declaration to that effect, and visitation rights.

Joan and Frank opposed appellant's action and have maintained throughout these proceedings that Frank is Z.'s father. The trial court granted summary judgment against appellant on the ground, in part, that under Evidence Code section 621, Z. is conclusively presumed to be the child of Frank and Joan. Appellant appeals from the judgment of dismissal.

Evidence Code section 621, subdivision (a), provides: "(a) Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."[1]

---

[1] Subdivision (b) permits a husband, under limited conditions, to challenge the presumption that he is the father.

■ The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657].) In addition, the rule protects the innocent child from the social stigma of illegitimacy. (*In re Marriage of B.* (1981) 124 Cal.App.3d 524, 529-530 [177 Cal.Rptr. 429].) Although the Uniform Parentage Act, adopted in California in 1975 (Civ. Code, § 7000 et seq.), attempts to remove the legal effects of illegitimacy, the Legislature nevertheless retained the conclusive presumption of Evidence Code section 621, in contrast to the other presumptions under the act, which are rebuttable. (Civ. Code, § 7004, subds. (a), (b); 7 Pacific L.J. (1976) 411, 412; Note (1976) 28 Hastings L.J. 191, 207.)

■ ⌊ The conclusive presumption of section 621 applies to the present case. Contrary to appellant's contention, there are no triable issues of fact as to the conditions for application of the presumption.

There is no issue as to the status of Joan and Frank as husband and wife. Cohabitation was shown by the declarations of Joan and Frank that at the time of conception they "resided and lived together and cohabited in every sense of the word . . . as husband and wife." Joan and Frank declared that during the period of conception they had sexual intercourse. In addition, Frank declared: "During the year 1969, I was not sexually impotent or sterile. I have never been told that I am or have been impotent or sterile. In addition to [Z.], I have fathered another child, [K. R]. [K.] was born on November 7, 1959, during a previous marriage of mine."

We find nothing in the counterdeclarations submitted by appellant which raises a triable issue of fact. Cohabitation means simply to live or dwell together in the same habitation; evidence of lack of sexual relations is irrelevant. (*S. D. W.* v. *Holden* (1969) 275 Cal.App.2d 313, 315 [80 Cal.Rptr. 269]; *Price* v. *Price* (1966) 242 Cal.App.2d 705, 708 [51 Cal.Rptr. 699].) Thus there is no merit to appellant's contention that declarations of two housekeepers that Joan and Frank slept in separate bedrooms creates any issue of fact as to cohabitation. In addition, these declarations involved dates long after the period of conception. Appellant also claimed in his own declaration that Joan had told him that she and Frank "had no sexual relations." The statement was uninformative

as to the dates involved and in any event was irrelevant to cohabitation. Neither does the statement mention impotence. Appellant also declared that Joan had told appellant that Frank had expressed to her "his belief that his son by a former marriage, [K.], was not his either." Even assuming that Frank made such statement, nothing in the statement suggests that sterility was the reason for Frank's belief. There is thus no evidence that Frank was sterile. The main purposes of section 621 are to maintain the integrity of the family unit and to protect the child from the social stigma of illegitimacy. Here, both husband and wife invoke that policy against a legal stranger to the family, whose allegations will brand the child as the product of an adulterous relationship. In the particular circumstances of this case, the burden must be on appellant to prove that Frank is sterile. To hold that appellant can wait until seven years after the birth, then come forward and challenge Frank to prove that Frank was not sterile in 1969, would be wholly contrary to the purposes of the legislation. To require that lack of impotence and lack of sterility be affirmatively proved by the husband in order to invoke the presumption defensively would significantly weaken the presumption. (See *S. D. W. v. Holden, supra*, 275 Cal.App.2d 313, 316.)

Thus there is no triable issue of fact as to the application of the conclusive presumption of Evidence Code section 621. ■ There is also no merit to appellant's contention that the court should have deferred ruling on summary judgment until blood tests could be taken. Blood test results are not admissible to contradict the conclusive presumption of Evidence Code section 621. (*S. D. W. v. Holden, supra*, 275 Cal. App.2d at p. 315.)[2]

■ Appellant next contends that if Evidence Code section 621 prevents appellant from trying to prove that he is Z.'s father, then application of the statute unconstitutionally denies him due process and equal protection. He cites *Stanley v. Illinois* (1972) 405 U.S. 645 [31 L.Ed. 2d 551, 92 S.Ct. 1208], and *In re Lisa R.* (1975) 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017]. The circumstances of those cases, however, were entirely different from this case, and we find no violation of appellant's constitutional rights. In *Stanley* there was only one person claiming fatherhood, the man who had lived with the

---

[2]The Legislature recently amended section 621 to permit the husband, but only the husband, to use blood tests to contradict the conclusive presumption if he acts in a timely manner. (Evid. Code, § 621, subd. (b); see *In re Marriage of B., supra*, 124 Cal.App.3d 524, 532.)

children's mother for many years but without being married to her. It was undisputed that the petitioner sired, lived with, raised and supported the children. (*Id.*, 405 U.S. at pp. 650-651 & fn. 4 [31 L.Ed.2d at p. 558].) Upon the mother's death, Illinois law automatically removed the children from his custody, without any showing of his unfitness as a parent. The court held that Stanley was constitutionally entitled to a hearing on his fitness before the children could be removed from his custody.

In *Lisa R.* the mother and her husband, the presumed father, were dead. The question was whether the juvenile court had jurisdiction to determine that another man was Lisa's father and whether he had standing to assert his paternity. Lisa's mother had not been cohabiting with her husband and thus the rebuttable presumption of former Evidence Code section 661, now Civil Code section 7004, subdivision (a)(1), rather than the conclusive presumption of Evidence Code section 621, was involved. The presumption was conclusive in effect, however, against the putative father because former Evidence Code section 661, like present Civil Code section 7006, subdivision (a), did not include such a man among the persons entitled to rebut the presumption. (*Id.*, 13 Cal.3d at p. 647.)

As in *Stanley* and unlike the present case, there were no competing private interests against the putative father's claims, since both the mother and the presumed father were dead. The mother had been separated from her husband and the putative father had actually lived with the mother before and after the birth and contributed to the child's support. (*Id.*, at p. 649.) He was deprived of her custody only when Lisa's mother returned to her husband. (*Id.*)

Appellant's interest in the instant case is not as great, nor entitled to as much constitutional consideration, as the interests of the putative fathers in *Stanley* and *Lisa R.* According to appellant's declaration, appellant had a long-standing affair with Joan and they had intercourse many times between September 1967 and October 1975, including the period of Z.'s conception. According to the declarations of appellant and a housekeeper at the R. residence, after the birth appellant would visit the R. home two to three times per week when Frank was not at home. Appellant would play and talk with Z. on these visits. After Joan and Frank separated, and Joan moved, appellant continued to visit Joan and Z. two to three times per week. Appellant sometimes took Z. out on Saturday afternoons, and on occasion Z. spent the night at appellant's

home with Joan's permission. Appellant told some of his friends that he was Z.'s father. Even after appellant and Joan terminated their relationship in 1975, Joan permitted appellant to continue to visit Z. until March 1977, after which she refused appellant any further contact with Z.

Thus, unlike the putative fathers in *Stanley* and *Lisa R.*, appellant has never lived with the mother and child, nor has he ever supported the child. The mother has at all times retained custody of the child, and opposes appellant's petition. (See *Adoption of Rebecca B.* (1977) 68 Cal. App.3d 193, 197 [137 Cal.Rptr. 100].)

Moreover, there are competing private interests in this case which were not present in *Stanley* and *Lisa R.* As indicated, the mother, who has custody of Z., opposes this action and does not desire that Z. be visited by appellant. Z. was born into, and for the first four years of his life lived with and was supported by the family unit whose integrity the conclusive presumption was designed to protect. (See Note (1979) 12 U.C. Davis L.Rev. 452, 469.) Although Frank is no longer living with the family, due to the divorce, he likewise opposes this action and continues to assert his fatherhood of the child. This protects the child against the social stigma of being branded the child of an adulterous relationship. Frank has supported and raised the child in the past, which appellant never did. In *Quilloin* v. *Walcott* (1978) 434 U.S. 246 [54 L.Ed.2d 511, 98 S.Ct. 549.], the father of an illegitimate child complained of a distinction in Georgia law under which, if a child was born during marriage, the consent of both the mother and father was required for a subsequent adoption, whereas if the child was born out of wedlock, only the mother's consent was required for a subsequent adoption. The appellant in that case asserted that his interests were indistinguishable from those of a married father who had separated or divorced from the mother. The court rejected this argument, stating: "We think appellant's interests are readily distinguishable from those of a separated or divorced father, and accordingly believe that the State could permissibly give appellant less veto authority than it provides to a married father. [¶] . . . [Appellant] never exercised actual or legal custody over his child, and thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child. . . . In contrast, legal custody of children is, of course, a central aspect of the marital relationship, and even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage. Under any

standard of review, the State was not foreclosed from recognizing this difference in the extent of commitment to the welfare of the child." (*Id.*, at p. 256 [54 L.Ed.2d at p. 520].)

As each case must be decided upon its own facts (*In re Lisa R., supra*, 13 Cal.3d at p. 651, fn. 17), we hold that the application of the conclusive presumption in the circumstances in this case does not deprive appellant of due process.

There is likewise no merit to appellant's equal protection argument. Appellant erroneously asserts he is the victim of a distinction based on gender. Mothers are bound by the conclusive presumption also. (*S. D. W. v. Holden, supra*, 275 Cal.App.2d 313.) As to the distinction between appellant and Frank, the Supreme Court of Delaware stated, in a somewhat similar case where the putative father sought custody and visitation rights, which were opposed by the mother and her husband: "A husband and acknowledged legal father is in a vastly different situation from that of a man, outside the family unit, claiming to be the father. Dissimilar treatment is therefore fully warranted. The denial of standing in the instant factual circumstance is compelled in view of the legitimate public policy to foster harmonious marital relations, to guard against assaults upon the family unit, and to protect the minor child from the permanent stigma and distress which would undoubtedly result were we to decide otherwise. Thus, we find no Equal Protection violation." (*Petitioner F. v. Respondent R.* (Del. 1981) 430 A.2d 1075, 1080; see *Quilloin v. Walcott, supra*, 434 U.S. 246, 256 [54 L.Ed.2d 511, 520].)

■ Appellant also contends that even if Frank is conclusively presumed to be Z.'s father, appellant is nevertheless entitled to a determination that appellant is Z.'s "biological" father, as distinguished from "legal" father. We find no merit to this contention. In enacting a conclusive presumption, the Legislature must have intended that only one man can be adjudicated a child's father. Z. already has a father, Frank. Appellant is not entitled to an adjudication of a status of biological father.

Finally, appellant contends that even if Frank is conclusively presumed to be Z.'s father, appellant should be allowed visitation rights, since Civil Code section 4601 gives discretion to grant visitation rights to "any other person having an interest in the welfare of the child." We think it obvious that in the circumstances of this case such court-

ordered visitation would be detrimental to the best interests of the child. Appellant's interest in visiting the child is based on his claim that appellant is Z.'s father. Such claim is now determined to be legally impossible. The mother does not wish the child to be visited by appellant. Confusion, uncertainty, and embarrassment to the child would likely result from a court order that appellant, who claims to be Z.'s biological father, is entitled to visitation against the wishes of the mother. (*Petitioner F.* v. *Respondent R., supra*, 430 A.2d 1075, 1080.)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1982.