[No. A034909. First Dist., Div. Two. Nov. 19, 1987.]

In re OLIVIA H., a Person Coming Under the Juvenile Court Law. DEPARTMENT OF SOCIAL SERVICES OF THE CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Respondent, v. GREGORY P., Defendant and Appellant.

COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Respondent.

Louise H. Renne, City Attorney, and Connie M. Rutherford, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

ROUSE, Acting P. J.—Defendant, Gregory P., appeals from an order of the juvenile court declaring Olivia H., who was then five and one-half months old, a ward of the juvenile court. Defendant's sole contention on appeal is that the juvenile court erred in denying him presumptive parental status under Civil Code section 7004.

On September 18, 1985, five days after Olivia was born, the San Francisco Department of Social Services filed, in the juvenile court, a petition which contained the following allegations relevant to the issues on this appeal: Count I - Olivia's mother had a drug abuse problem which required treatment and rendered her unable to care for her child at that time; count II - the child was born with a positive "tox screen" for amphetamines and methamphetamines; and count V - the mother of the child had failed to obtain prenatal care. The petition requested that Olivia be declared a dependent child of the court pursuant to Welfare and Institutions Code section 300, subdivision (a), which provides, in pertinent part, that such action may be taken with regard to a minor "Who is in need of proper and effective parental care or control and . . . has no parent or guardian willing to

exercise or capable of exercising care or control, or has no parent, guardian or custodian actually exercising care or control."

Defendant became involved in the action at an early stage in the proceedings, seeking custody of Olivia on the ground that he was her presumptive parent. Initially his claim was based upon the assertion that he was Olivia's biological father and that he has been present at the hospital on the date of Olivia's birth and consented to the mother's placing his name on Olivia's birth certificate as her father. Also, he willingly offered to accept the child into his home, which he shared with a male roommate. It was clear from the evidence, however, that defendant was not living with Olivia's mother during her pregnancy nor had they ever lived together or held themselves out to be man and wife.

At the time of her birth, there was no possibility that her mother, Mary H., could take custody of Olivia. After serving eight years in an Arizona prison for murder, Mary H. had broken the conditions of her parole in Arizona and was wanted for parole violation when Olivia was born; therefore, she was confined in the San Francisco County jail shortly after Olivia's birth.

On October 10, 1985, the juvenile court ordered Olivia released to defendant's home. However, the department of social services, which had filed the original petition that Olivia be declared a dependent child of the court, filed a declaration setting forth certain facts of which the court was unaware when it ordered Olivia released to defendant, namely, that (1) defendant was disabled from cerebral palsy to such an extent that he was receiving a full SSI grant, and such a disability might prevent him from physically providing safe and adequate care for Olivia; (2) defendant had a history of substance abuse that required treatment and had in the past required his hospitalization on several occasions for drug overdoses; and (3) defendant had a history of assaultive behavior with knives and had been placed in special schools and residential placements. The declaration further averred that these facts had been added by amendment to the original dependency petition and asked that the court stay its order of October 10 1985, and declare Olivia a dependent child of the juvenile court.

On October 11, 1985, the petition was amended in the manner indicated in the declaration, and the petition was also amended to state that a friend of defendant had stated that he believed that he could be Olivia's biological father. On the same day the juvenile court stayed the order of October 10, 1985, and directed that Olivia not be placed in defendant's custody.

Thereafter, several hearings were held, and on December 10, 1985, the juvenile court granted the motion of Olivia's counsel that the parties be compelled to submit to blood tests on the issue of paternity.

At a hearing held on January 16, 1986, after reviewing a laboratory report prepared by the Eugenics Department of the University of California, the juvenile court found that there was conclusive evidence that defendant was not the biological father of Olivia. At the same hearing, the court found the allegations of counts I, II and V of the dependency petition to be true: that Olivia's mother was unable to care for Olivia due to a drug problem of the mother that required treatment; that Olivia was born with a positive "tox screen" for amphetamines and methamphetamines; and that Olivia's mother had failed to obtain prenatal care.

At a hearing held on January 30, 1986, the juvenile court found that, under Civil Code section 7004, defendant did not qualify as Olivia's presumed father. Also, the court granted the motion of the Department of Social Services to exclude defendant as a formal party to the proceedings, but did rule that, due to his interest in Olivia, he could continue to participate in the proceedings in the status of an interested party.

On February 24, 1986, an order was signed and filed declaring Olivia a dependent child of the juvenile court. Defendant filed a timely notice of appeal.

## I.

■ Defendant's sole contention on appeal, that he should have been found to be Olivia's presumptive father, is based upon his reading of Civil Code section 7004. That statute, which was enacted in 1975 as part of the Uniform Parentage Act (Civ. Code, § 7000 et seq.), provides, in pertinent part, that assuming certain other conditions of that statute are met and that certain exceptions do not apply, "(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth . . . in any of the following subdivisions: . . . [¶] (4) He receives the child into his home and openly holds out the child as his natural child." (§ 7004, subd. (a); see *Vincent B.* v. *Joan R.* (1981) 126 Cal.App.3d 619, 623 [179 Cal.Rptr. 9].) Defendant claims that, since he signed Olivia's birth certificate, thereby openly acknowledging her as his child, and was also willing to take her into his home, the juvenile court was required to find that he was her presumptive natural father.

This argument not only conveniently overlooks other controlling language of Civil Code section 7004, but also ignores the historical background of the statute. From 1872 until its repeal in 1975, former Civil Code section 230 provided, in pertinent part, that "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such . . . into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes

legitimate from the time of its birth." (Former Civ. Code § 230, repealed Stats. 1975, ch. 1244, p. 3196, § 8.)

However, as early as 1872, when former Civil Code section 230 was enacted, the Legislature also enacted former Code of Civil Procedure section 1962, which created certain presumptions, including "5. The issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate . . . ." (Former Code Civ. Proc. § 1962.)

In 1965, former Code of Civil Procedure section 1962 was repealed (Stats. 1965, ch. 299, § 110, p. 1363) and reenacted in slightly different form as Evidence Code section 621 (Stats. 1965, ch. 299, art. 2, p. 1308.) The newly enacted section 621 provided that "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent is conclusivsly presumed to be legitimate."

At the time of the facts here in issue, Evidence Code section 621 provided, in pertinent part, that "(a) Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage. [¶] (b) Notwithstanding the provisions of subdivision (a), if the court finds that the conclusion of all the experts, as disclosed by the evidence based upon blood tests . . . are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly."

At all times since its enactment in 1975, Civil Code section 7004 has provided, in pertinent part, that "(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth in Section 621 of the Evidence Code" or those set forth in the following four subdivisions of section 7004. Subdivision (a)(1) of the statute deals with the situation where the alleged presumptive father and the child's natural mother are or have been married to each other and the child is born during the marriage or within 300 days after the marriage is terminated in one way or another. Subdivision (a)(2) deals with the situation where the alleged presumptive father and the child's natural mother have entered into an attempted marriage which is or could be declared invalid. Subdivision (a)(3) deals with the situation where the alleged presumptive father and the natural mother of the child have unsuccessfully attempted to legally marry after the birth of the child and the alleged father has met certain other requirements. Subdivision (a)(4), upon which defendant places his sole reliance, provides that a man is presumed to be the natural father of a child if "He receives the child into his home and openly holds out the child as his natural child."

However, Civil Code section 7004 then goes on to state that "(b) Except as provided in Section 621 of the Evidence Code, a presumption under this

section is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. . . . The presumption is rebutted by a court decree establishing paternity of the child by another man."

Stated as succinctly as possible, defendant's position on appeal is that, whereas former Civil Code section 230 spoke in terms of a "father" rather than a "man" legitimating a child born out of wedlock, and whereas, in 1975, the Legislature repealed that statute and enacted Civil Code section 7004, which specifies the ways in which a "man" can become the presumptive natural father of a child, the Legislature thereby eliminated any requirement that a man be the biological father of a child in order to qualify as its presumptive natural father. According to defendant, all that he was required to do, and did in fact do, in order to qualify as Olivia's presumptive father under Civil Code section 7004 was to receive her into his home and openly hold her out as his natural child.

His argument is unpersuasive. It renders meaningless the language of subdivision (b) of Civil Code section 7004 to the effect that, except as provided in Evidence Code section 621, the presumption that a man is the natural father of a child "is rebutted by a court decree establishing paternity of the child by another man."

In this instance, the juvenile court ordered blood tests taken on the issue of paternity, received and evaluated the laboratory reports and found that there was conclusive evidence that defendant was not Olivia's biological father. (*Ante,* p. 328.) Under such circumstances, defendent was precluded from establishing presumptive parenthood under Civil Code section 7004. Such being the case, subdivision (b) of that statute was clearly controlling: "The presumption [that a man is the natural father of a child] is rebutted by a court decree establishing paternity of the child by another man."

The order declaring Olivia a ward of the juvenile court is affirmed.

Smith, J., and Benson, J., concurred.